(87 South. 478)

No. 22670.

## SCOTT v. SAMPLE.

(Nov. 3, 1920. On Rehearing, Feb. 28, 1921.)

*(Syllabus by the Court.)*

1. **Bailment** ⟷31(1) — **Burden is on cotton ginner failing to return cotton.**

One who receives cotton to be ginned and baled incurs the obligation to return it to the owner; and, failing so to do, the burden of proof, in an action for the recovery of the value of the cotton, rests upon him to establish the facts which may excuse such failure and to show that he had exercised the care that a prudent man takes of his own.

2. **Bailment** ⟷32—**Interest on the money value of property lost through bailee's fault is due from date of loss.**

Interest upon money recovered as the value of property lost through the fault of the bailee is due from the date of the loss.

### On Rehearing.

*(Additional Syllabus by Editorial Staff.)*

3. **Bailment** ⟷14(1) — **Ginner's failure to maintain watchman over cotton while on railroad platform for shipment held not negligence.**

In an action by an owner of cotton against the operator of a cotton gin for damages for the destruction of cotton bales by fire after ginning and while on a railroad platform, erected for the convenience of the owners of cotton to facilitate shipment, failure of the ginner to maintain a watchman over the cotton while on the platform *held* not negligence.

Appeal from First Judicial District Court, Parish of Caddo; J. R. Land, Judge.

Action by W. T. Scott against A. N. Sample. Judgment for plaintiff, and defendant appeals. Modified and affirmed.

W. P. Hall, of Shreveport, for appellant.

Foster, Looney & Wilkinson, of Shreveport, for appellee.

### Statement of the Case.

MONROE, C. J. Plaintiff brings this suit for the value of certain cotton which, having been sent to defendant's establishment to be ginned and having been ginned and baled, was burned by reason, as plaintiff alleges, of the negligence of defendant or his servants, and of which plaintiff was the owner of one bale, and sues in that capacity and also as the transferee of the claims of certain other owners similarly situated. There was judgment in his favor in the trial court for $2,283.44, with interest from judicial demand. Defendant prosecutes the appeal, and plaintiff has answered, praying that he be allowed interest from the date of the loss, October 15, 1915, and that the judgment be based upon an additional ground. The facts as we find them are as follows:

In 1915, defendant was operating a public cotton gin at a station called "Howard," on the line of the Texas & Pacific Railroad, for the service of which the railroad company had constructed a spur track, alongside of the gin and press house, and, say, 74 feet to the eastward of the main track, which ran north and south, and had also constructed, adjacent to the spur, a platform for the reception of the cotton when ginned and baled, and from which it could be conveniently loaded upon the cars, which platform was connected with the gin and press house by a "run" over which the bales could be trucked or rolled from a smaller platform that adjoined the house. There is testimony tending to show that during the day on October 15 the ginner directed a negro to take out from about the gin a handful, more or less, of cotton which was on fire, and that the negro took it and extinguished the fire by stamping the burning cotton into the ground; that on the following morning, after the fire which burned a number of bales that had been placed on the railroad platform, as also the platform, defendant was asked whether he thought that the fire last mentioned had its origin in that which had occurred in the gin house on the previous day, and that he

answered, "No;" that the fire of the previous day had occurred about 11 o'clock (in the morning) and that the other had not broken out until night. Defendant's testimony on that subject, after stating that he was at the gin house during the day preceding the night of the fire until about 3 o'clock, or a little later, reads as follows:

"Q. Did you see any fire there that day? A. No, sir. Q. Did you hear of any? A. No, sir. Q. Did you hear any suggestion of cotton scorching or smelling? A. Yes, sir. Q. Tell just what occurred. A. Mr. Aycock [the ginner] and I were at the press working, when Mr. Legrand—the old man—walked up there and said, 'Mr. Aycock, there is something wrong with this gin stand;' and Mr. Aycock then went around to the gin stand and opened up the press and cleaned it out, and I walked back and said, 'What's the matter;' and they said, 'Just a tag in the gin breast which is causing a little friction.' Q. That was all that you saw or heard of it? A. Yes, sir; and I asked if there was any fire there, and he said, 'No, sir.' * * * Q. Mr. Scott testified that to a remark made by Mr. Legrand to you on the next morning—Mr. Scott testified that Mr. Legrand asked you if this fire did not probably occur from the fire of the day before, and that you replied that it did not, as that occurred at a certain time in the day, etc. Now what did you refer to? A. I referred to the occasion when he called Mr. Aycock away from the press."

Williams, a negro boy, testifies that in the afternoon of the 15th, Mr. Aycock was in the gin stand; that there was some cotton on the floor burning; and that, by Aycock's order, he picked it up and carried it out into the big road and stepped on it and opened a hole and burned it. Johnson, another negro boy, testifies that he went behind the gin, by Aycock's order, and raked out some dirty cotton; that he saw Williams there at the time; that, when he returned, Aycock asked him what he did with the fire, and he replied that the fire had been given to Williams, not to him. He further testified that he saw a small bit of fire in the gin stand. P. A. Legrand, Jr., a white boy, testifies that he saw Williams come out of the gin with burning cotton in his hand; that it was "smoking"; that he came down and stamped it out on the ground; that he said the ginner had given it to him.

Mr. Aycock denied positively that any such incident as that testified to by Williams occurred. He recalled that defendant was in the gin house and about the press during the day in question, but had no recollection of the incident to which he testified.

We find no sufficient reason for doubting the occurrence of either of the incidents, since the witnesses who testified thereto are not impeached and their testimony is consistent and corroborative. It is shown by other testimony that fire not unfrequently originates in cotton gins; that the main cause is that the brush fails to take the lint off the saw, which pulls it back into the ribs, causing it to clog, and that the friction will set it on fire; that up to this time nothing has been devised which will prevent a happening of that kind. It is also shown that, when fire occurs, the prudent and proper thing to do is to stop the gin, and to isolate the bale of cotton into which any burning lint may have been carried (the lint being carried by draft, through a flue, from the gin into the press), and that no such precaution was taken in this instance. It is further shown that, including the cotton that was burned, there were, perhaps, 80 bales on the platform; that the platform was situated on a public road (in addition to the railroad) without even a fence around it; and that no watchman was employed to guard it, though people of all kinds, including tramps, were passing at all times, day and night. The fire is said to have broken out about 10:15 o'clock, of the night of October 15, and consumed between 30 and 40 of the bales on the platform, the rest of the bales having been saved. The cotton is said to have been worth 12 cents, and, save as to four bales, there is no dispute as to the

weights of the bales here in question. Plaintiff claims the value of cotton burned as belonging to himself and to the following named parties, of whom he alleges that he is the transferee, "as per assignment annexed and made part" of the petition, to wit:. P. A. Legrand, D. M. Moody, Tobe Chitman, Bill Clarkson & Son, Adam Lewis, J. Luster, J. C. Chitman, N. H. Henderson, Richard Wesley, and H. O. Adley. But the assignment bears the following signatures, and no others: Richard Webb, Tobe Chitman, Nick (N. H.) Henderson; John (J. C.) Chitman, John Clinton, P. A. Legrand, D. M. Moody, H. O. Adley, and J. F. Luster.

Of those named in the petition, it does not appear that Bill Clarkson & Son, Adam Lewis, or Richard Wesley have assigned their claims; and, of those who have assigned their claims, John Clinton and Richard Webb are not mentioned in the petition. The claims that we are able to consider, and which are established by the evidence are, therefore, the following:

| Names. | No. of Bales. | Pounds. | Rate. Amt. |
|---|---|---|---|
| P. A. Legrand | 4 | 2,400 | |
| D. Moody | 8 | 4,170 | |
| Tobe Chitman | 4 | 2,005 | |
| J. Luster | 2 | 1,010 | |
| John Chitman | 1 | 505 | |
| W. H. (Nick) Henderson | 5 | 2,752 | |
| H. O. Adley | 3 | 1,500 | |
| W. T. Scott | 1 | 535 | |
| | | 14,877 | |
| | | | at 12 cents is $1,785.24 |

### Opinion.

The platform upon which the cotton was delivered was built by the railroad company for the common advantage of defendant and itself, but it is not pretended that the railroad company had agreed to accept responsibility for property delivered thereon at the will of defendant; nor is it suggested that the fire was ignited by sparks from a passing engine, the evidence furnishing no basis for that suggestion. In fact, defendant offers no theory as to the origin of the fire, and our conclusion is that it must have originated either in the gin house or after the cotton reached the platform, and that in either case the loss here complained of may properly be attributed to the negligence of the defendant or his agents.

[1] It is shown that it is quite possible for a spark to be carried from the gin into the press, and that it there may be extinguished, by the compressing of the cotton, or may smolder, and blaze at a later period. Hence it was negligent in Aycock not to have stopped the gin when the fire was discovered therein, or to have isolated the bale then in the press, or perhaps to have taken both precautions. But, assuming that there was no fire in the gin, it was negligent in defendant to have exposed property of that description, almost as easily ignited as gunpowder, upon an open platform, on a public road, at night, without a watchman to see that it was not set on fire by some careless or vicious person who might be passing or might take up his lodging upon or among the bales. Defendant received the cotton to be ginned, baled, and returned to the owner, and, failing to return it, the burden of proof rests upon him, as a bailee for hire, in an action to recover its value, to establish the facts which might excuse such failure, and to show that he exercised at least the care that a prudent man takes of his own. Nicholls v. Roland, 11 Mart. (O. S.) 190; Schwartz v. Baer, 21 La. Ann. 601; Thomas v. Darden, 22 La. Ann. 413; Sea Ins. Co. v. Railroad Co., 159 Fed. 676, 86 C. C. A. 544, 17 L. R. A. (N. S.) 925; Gibbons v. Railway Co., 130 La. 672, 58 South. 505.

[2] Plaintiff is entitled to interest from the date of the loss, but must suffer a reduction in the amount of the principal awarded.

It is therefore ordered and decreed that the judgment appealed from be amended by reducing the principal amount therein awarded from $2,283.44 to $1,785.24, and by

allowing legal interest on the sum last mentioned from October 15, 1915, until paid, and, in all other respects that said judgment be affirmed; the costs of the appeal to be paid by the litigants in the proportions of one-half by each.

### On Rehearing.

DAWKINS, J. [3] On reconsideration we are convinced that the finding in our former decision that the defendant was guilty of negligence in failing to maintain a watchman over the cotton after it had been delivered on the railroad platform was erroneous. The platform was built by and was the property of the railroad company, erected for the convenience of the owners of the cotton, to facilitate its shipment, and was the point at which it was received by the railroad, just as much so as the platform of any regular freight depot. The only connection that it had with defendant's business as a public ginner was that it was joined to the press platform by a runway over which the cotton was carted to the railroad platform; shipments from the latter being made almost daily. It is true that the arrangement afforded defendant some convenience in getting the cotton after it was pressed, and his undertaking with respect thereto had been completed, out of his way; but the main purpose of the platform here in question, as stated, was for the benefit of the owners and the railroad company. If, instead of being situated as it was, the platform had been 100 yards away, disconnected with the gin, and the cotton had been, at the owner's instance, delivered there for shipment, just as it was here, we think it would hardly have been contended that defendant owed any further duty in the premises. We can therefore see no difference between that case and the present one, where the same character of delivery was made to the railroad company, merely because it was nearer by. Meyer & Co. v. Railway Co., 41 La. Ann. 639;[1] Whitehurst v. T. & P. Ry. Co., 131 La. 139, 59 South. 42; 6 Corp. Juris, p. 1142, § 96, verbo Bailments.

It is true, as shown by the authorities cited by plaintiff (Sea Ins. Co. v. V., S. & P. Ry. Co., 159 Fed. 676, 86 C. C. A. 544, 17 L. R. A. [N. S.] 925; Nicholls v. Roland, 11 Mart. [O. S.] 190; Schwartz, Kaufman & Co. v. Baer, 21 La. Ann. 601; Thomas v. Darden, 22 La. Ann. 413; and Gibbons v. Railway Co., 130 La. 671, 58 South. 505), that where a bailee fails to return property intrusted to his care, he bears the burden primarily of showing why he has failed to do so. But, when he has shown that the cause was due to destruction of the bailed goods by fire, the burden again shifts to the shoulders of the bailor to show that the fire (contrary to the case of a common carrier, innkeeper, etc.) was caused by the bailee's negligence. McCullom v. Porter, 17 La. Ann. 89; 40 Cyc. p. 473, verbo Warehousemen. Under the circumstances of this case, however, that rule, even, is inapplicable, for the reason, as above shown, the cotton destroyed had already been returned to or delivered by defendant to a person designated, for plaintiff's benefit, and the relation of bailee and bailor had ended. So that plaintiff carried the duty here of showing by a preponderance of the proof that the loss was occasioned by defendant's negligence.

On this phase of the case, we reviewed the evidence fully in our former opinion, and see no occasion to do so again. It is sufficient to say that, like the lower court, we think the plaintiff has discharged the burden of proof by a fair preponderance of the evidence, showing that the cause of the loss was the fire which originated in the gin stand, and which the defendant's foreman negligently failed to see was entirely extinguished, or that the bale into which it was pressed

---

[1] 6 South. 218, 17 Am. St. Rep. 408.

was isolated so as not to endanger the other cotton. The matter involves largely a question of the veracity of the witnesses, the numbers are considerably in favor of plaintiff's contention, none have been impeached, and we see no reason to differ with the lower judge in his estimate of the weight of the evidence.

For the reasons assigned, our former decree is reinstated and made the final judgment of the court.