S.J. Cohen, a resident of the State of Arkansas, entered into a contract with the Cane River Levee Drainage District in the year 1939 under which he agreed to perform certain drainage work in Natchitoches Parish. A part of it was sub-contracted by him to W.B. Stewart of Lafayette, Louisiana, this including the construction of a large concrete culvert under Highway No. 20 at a point approximately two miles south of Cloutierville.
Stewart's undertaking was entirely completed on October 8, 1939, at which time he removed his equipment, materials and men to another section of the parish about ten miles away. In moving, however, he failed to destroy a number of paper bags from which cement had been obtained.
Charging that certain cattle belonging to him and to his neighbors had eaten some of those empty cement bags and had died as a result thereof between the dates of November 24, 1939, and December 3, 1939 plaintiff, Emanuel Condet, brings this suit to recover damages for the loss of the stock. He sues in his individual capacity and as assignee of the claims of the neighbors, Frank Coutee and Auguste Rachel, demanding a judgment totaling $240; and he names as defendants S.J. Cohen, the contractor, and W.B. Stewart, the sub-contractor on the culvert construction job. Specifically, plaintiff alleges: "That all of said cattle were poisoned as a result from chewing said sacks and their death was due to the gross carelessness and negligence of said defendants and/or their agents or employees by leaving said sacks where said cows were roaming at large." Only W.B. Stewart was cited.
Stewart, in his answer, denied that the deaths of the cattle were attributable to their eating the mentioned cement bags.
A trial of the merits was had, and thereafter the district court rejected the demands of plaintiff and dismissed the suit.
The judge concluded, to quote from his well considered written opinion in which all of the evidence adduced is thoroughly analyzed, that:
"The burden is upon the plaintiff not only to offer a preponderance of the testimony, but to prove his case with reasonable certainty to the satisfaction of the Court.
"The evidence is largely circumstantial. These cows roamed at large unattended from morning until night. Where they went and what they ate no one knows. Their symptoms, according to the expert testimony, could have been caused by disease or by eating nitrate fertilizer commonly used in the neighborhood.
"After carefully considering this case, we conclude that plaintiff has not sustained the burden of proof. His demand is accordingly rejected at his cost."
Plaintiff perfected this appeal.
If it be conceded that the cattle ate some of the paper bags, just as plaintiff claims, the record is not convincing that the small amounts of cement remaining therein actually caused their deaths.
The testimony of the medical experts preponderately shows that cement will not poison animals when taken internally. Rather, from the eating of a sizable quantity of it, there results an impaction of the stomach, this meaning that a mass forms in the honeycomb portion of that organ which can not be emitted; and some physical destruction of the digestive system is possible.
Two of the dead cows were opened and examined, testified plaintiff, by Dr. Staples, a veterinarian from Alexandria, Louisiana. The latter's untimely death, however, prevented his testifying in the case. The inference to be drawn from plaintiff's testimony is that such veterinarian reported the ailment as being cement poisoning, for he says that as a result of the report this suit was filed.
While observing the post-mortem examination plaintiff noticed that "all the inside was eaten out, it was just a little bit of thin skin on the paunch." *Page 259 
In commenting on the autopsy performed by Dr. Staples, the trial judge appropriately said:
"Condet was present and saw Staples cut open two of the cows. He testifies at length as to the extent their insides had been eaten away. He says not a word about seeing any cement or having his attention called to any by Dr. Staples. Had there been any it is certain Staples would have exhibited it and retained or given to Condet samples as evidence in this impending litigation. We conclude that he only gave his opinion. Considering that defendant has had no opportunity to cross examine Staples, we cannot inferentially attach much weight to that opinion, not knowing upon what facts it was based."
Another veterinarian, testifying as a witness for plaintiff, said that it was possible for a cow to die as a result of eating cement, for that substance could cause a "whetting away of the intestinal tract." There would be, in such case, a physical but not a chemical reaction. On the other hand, he said that nitrate of soda, which is commonly used as fertilizer by many farmers in the locality in question, "will produce death in the animal due to the eating out of the whole intestinal tract." Further, he gave the following testimony:
"Q. The State of Louisiana as well as your home state of Texas have built numerous concrete roads in the last few years? A. Yes, sir.
"Q. Have you known of any animals grazing along those roads to have died from eating cement sacks? A. No."
The most that can be said of the proof in the record is that it shows that the deaths possibly resulted from the cattle's eating of the cement bags. The possibility, however, is rendered remote when there is considered the circumstance mentioned by the district judge in the following observation made by him:
"If these cows died from eating cement sacks a short time before their end it is strange that though cement necessarily was handled for a long period of time prior to the completion of the work on October 7th with the cattle passing by daily, none became sick until long after Stewart had departed and after Cohen had cleaned up, sodded and watered the premises."
It is well settled that a litigant on whom the burden of proof rests, such as this plaintiff, must do more than make out a possible or probable case. The duty devolves upon him to show with reasonable certainty the existence and verity of his demand. This duty, according to our appreciation of the evidence, has not been discharged in this cause.
We find inapplicable the cases cited by plaintiff's counsel, namely, Schultz et ux. v. Kinabrew et al., La.App., 177 So. 450; Hunt v. Rundle, 10 La.App. 604, 120 So. 696; and Balsamo v. Hall, La.App., 170 So. 402. In the first two named authorities, it was conclusively proved that the involved dangerous articles, being lye and gasoline respectively, actually caused the complained of injuries. The last cited case concerns an intersectional automobile collision.
The judgment is affirmed.
DREW, and TALIAFERRO, JJ., concur.