**COOK & CO., INC., Plaintiff,**

v.

**GULF SHIPSIDE STORAGE CORPORATION, Defendant.**

Civ. A. No. 8022.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 19, 1959.

Lemle & Kelleher, Charles Kohlmeyer, Jr., New Orleans, La., Clifton & Mack, Clarence Clifton, Memphis, Tenn., for plaintiff.

Cahn & Provensal, Sidney W. Provensal, Jr., New Orleans, La., for defendant.

**J. SKELLY WRIGHT, District Judge.**

During the 1956–57 cotton season, approximately 15,000 bales of cotton owned by plaintiff, Cook & Co., Inc., were placed in warehouses operated by the defendant in New Orleans, Louisiana. Plaintiff claims an 81,726 lb. weight loss in the cotton while it was in defendant's custody, and asks for a judgment in the sum of $28,219.95 to cover this loss. The weight loss occurred in 2,184 bales of cotton, most of which were given outside storage during the months they were on the defendant's premises. No tarpaulin or covering of any kind was placed over this outside cotton, with the result that it was subjected to heavy rains, including one storm which visited New Orleans during the period in question, September 1956–April 1957. In addition, after being wet, the defendant warehouseman took no steps to air or to dry the cotton. The result was the damage in suit in the form of loss of weight.

The defendant contends that Cook & Co., Inc., was aware of the fact that some of the bales of cotton would be given outside storage. It points to the warehouse receipts themselves which so show on their face. The defendant also contends that the cotton was allowed to remain in its custody for a longer period of time than originally anticipated by the parties and that it was the failure of the plaintiff to remove the cotton from storage which caused the damage.

■ There is no dispute between the parties as to the law applicable in this case. Both agree that the duty of the warehouseman is to use "such care in regard to (the cotton) as a reasonably careful owner of similar goods would exercise." LSA–R.S. 54:21. It is also clear that the bailor, the plaintiff here, makes out a prima facie case when he proves, by the warehouse receipts, the receipt of the cotton by the warehouseman in good order and its return in bad.[1] Once a prima facie case is made out, the burden of going forward with the evidence is on the bailee to offer evidence of due care.[2] Semantics aside,[3] once

---

**1.** Jeter v. Lachle, La.App., 106 So.2d 808; Fidelity & Deposit Co. of Maryland v. Rednour, La.App., 44 So.2d 215; Colgin v. Security Storage & Van Co., La. App., 15 So.2d 664. See also Southern Ry. Co. v. Prescott, 240 U.S. 632, 36 S.Ct. 469, 60 L.Ed. 836.

**2.** See Note 1.

**3.** The principle is well stated in Denning Warehouse Co. v. Widener, 10 Cir., 172 F.2d 910, at page 912, 13 A.L.R.2d 669:

"As Chief Judge Learned Hand puts it: 'The presumption on which the bailor may rely is a mere rule for the conduct of the trial. It puts upon the bailee the risk of a directed verdict if he does not meet it, but it does no more; once

he has done so, it disappears from the case. Thus, it can never concern the jury.' Alpine Forwarding Co. v. Pennsylvania R. Co., 2 Cir., 60 F.2d 734, 736. Although there is some confusion and variation along the way, 6 Amer.Juris., Sec. 364, it is undoubtedly the great weight of decisional law that the so-called bailment presumption does not shift the burden of proving lack of due care from the bailor to the bailee, but merely calls upon the bailee to come forward with evidence sufficient to overcome the legal presumption. See Annotations 9 A.L.R. 59; 71 A.L.R. 767; 151 A.L.R. 717; 6 Amer.Juris. Secs. 364–381; 8 C.J.S. Bailments § 50, p. 344."

See also Buntin v. Fletchas, 5 Cir., 257 F.2d 512.

proof of due care is offered, the court will determine, after consideration of all the evidence, whether the loss resulted from a lack of reasonable care.[4]

 The weight loss in the cotton is stipulated. The plaintiff, therefore, has made out its prima facie case. The Court must now determine the question of reasonable care. At the outset, reference should be made to LSA–R.S. 54:3 (2) which provides that a warehouseman may not condition his warehouse receipt to "in any wise impair his obligation to exercise that degree of care in the safe-keeping of the goods entrusted to him which a reasonably careful man would exercise in regard to similar goods of his own." Also in mind should be the proposition that the warehouse receipt is the contract between the parties and that ordinarily parol evidence will not be allowed to vary its terms. In spite of this Louisiana statute and the parol evidence rule, the Court allowed the defendant to produce evidence of the conversations between the parties to show what the defendant claims their understanding was as to the care the cotton was to receive while in the defendant's custody. On its own testimony seeking to vary its written contract with the plaintiff and to offset the effect of the Louisiana statute, the defendant must be held liable for this loss.

The proof is clear that while the plaintiff agreed to temporary outside storage for its cotton, the defendant admits that, under the agreement, this outside cotton was to be moved inside as soon as space therefor became available. This was not done, in spite of the fact that space inside did become available to such an extent that in November 1956 the defendant circularized the trade so advising. The uncontradicted proof further shows that the defendant allowed this cotton to remain outside for a matter of months without covering of any kind, without drying or airing after it had become wet, and standing on pallets which tended to retain water at the base of the cotton.

On this showing, it is impossible to understand how defendant can suggest that it acquitted itself of its duty as a warehouseman to furnish this cotton reasonable care, the care a careful owner would take of similar goods. The proof confirms, as even a layman knows, that cotton should not be exposed to the elements for a long period of time, that if cotton should get wet, it should be aired and dried to prevent putrefaction.

Judgment for plaintiff.