121 So.2d 70

**BROWN & BLACKWOOD**

v.

**RICOU–BREWSTER BUILDING COMPANY, Inc.**

No. 44003.

May 31, 1960.

Paul G. Lee, Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for plaintiff-appellant.

Melvin F. Johnson, Johnson, Morelock, Gatti, Egan & Cook, Shreveport, for intervenor-appellant.

Bodenheimer, Looney & Richie; Cook, Clark, Egan, Yancey & King, Shreveport, for appellee.

HAMLIN, Justice.

Plaintiffs lessees, Pat Brown and George Blackwood, and intervenor, Jean Despujols, appeal from a judgment of the trial court which rejected their demands for damages alleged to have resulted from a fire occurring in premises owned by Ricou-Brewster Building Company, Inc., defendant lessor.

By written contract of lease,[1] plaintiffs rented from defendant a former residence ("Old Ricou Home," vacant for approximately three years) located at 1094 Louisiana Avenue, Shreveport, Louisiana, for use as an interior decorating studio. Defend-

1. The lease was for the term of two years, beginning October 1, 1954 and ending September 30, 1956.

ant lessor made extensive repairs to the house, including plastering, painting, and putting into operation a Bryant floor furnace located in a room used by plaintiffs as an office. In accordance with the terms of the lease, the interior was repaired and redecorated by plaintiffs lessees.

The studio was formally opened to the public on November 28, 1954, at which time there was trouble with the lighting. Trouble shooters who were called replaced fuses and turned off the floor furnace, and a few days thereafter defendant had the furnace repaired at the instance of plaintiffs' secretary.

During the early morning hours of December 13, 1954, when no one was present, a fire occurred in the building. There was partial destruction of the premises and an alleged inventory damage of $32,062.64 to plaintiffs' collection. The Bureau of Fire Prevention Investigation Report stated:

"Fire apparently started in the area adjacent to the floor furnace. A large hole was burned in the floor on the north side of the floor furnace. The furnace had been installed without allowing clearance between the furnace and the combustible flooring. The occupant of the building reported that he had some trouble with the electrical circuits whenever the floor furnace was in operation but that the owner had sent some employees from the Ricou Brewster Building to correct the trouble. Some unapproved electrical wiring was noted in the area under the house—Stayton Thomas, City Electrical Inspector, noted the violations. The building had apparently been occupied without a Certificate of Occupancy being issued by the City. The fire could have been caused by failure of the high limit control on the heater or by electrical short-circuit in the heater controls. The heater or furnace was not vented to the outside air, the vent stack only extended about a foot from the unit. The fire spread into the wall to the west of the unit, up the wall and into the upper floor and attic area. The wall did not have fire stops, the stairways were not enclosed, the walls were constructed of plaster over wood lath."

Suit was filed by plaintiffs under Article 2695 of the LSA–Civil Code [2] for dam-

---

2. "The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same." See, LSA–C.C., Art. 2692; LSA–R.S. 9:3221.

ages in the sum of $74,364.14 (this amount included alleged incidental damages as well as inventory damage). It was alleged that the fire was occasioned by the vices and defects in the premises leased and the negligence of the lessor. In petition and amended petition, plaintiffs alleged that:

"* * * said fire was started by a negligently installed and *faulty floor furnace* installed by the owners of the property prior to the lease above mentioned." [3]

"That the fire definitely originated from the defective and negligently installed floor furnace and the unapproved wiring in connection therewith and your petitioners expressly plead *res ipsa locquitur.*" (Emphasis ours.)

Defendant denied the allegations of plaintiffs' petition and alternatively pleaded contributory negligence in the following non-exclusive particulars:

"(a) In opening up all the doors in the leased premises in an effort to have the floor furnace claimed to be defective to heat the entire house, which was considerably more space than the furnace was designed for and which action by the plaintiffs was directly in violation of the instructions and recommendations given to them by the lessor and its representatives.

"(b) In allowing some object not connected with the floor furnace to come in direct contact with the floor furnace and thus start the fire complained of.

"(c) In failing to remedy a defect in the floor furnace of which plaintiffs had knowledge."

Defendant later filed an exception of no cause or right of action to plaintiffs' petition, which was referred to the merits.

The trial commenced on June 19, 1956, and, while evidence was being heard, a petition of intervention and a supplemental and amended petition of intervention were filed by Jean Despujols, owner of the Despujols painting "Two Sisters" listed in plaintiffs' inventory. Alleging that his picture was borrowed by Pat Brown and George Blackwood for display purposes upon the opening of their studio, he prayed for damages in solido against plaintiffs and defendant in the sum of $5,000.

Defendant filed an exception of no right or cause of action to the intervention of Jean Despujols and an exception or plea of prescription to said intervention. These exceptions were referred to the merits.

Plaintiffs, Brown and Blackwood, filed no pleadings to the petitions of intervention, but, on December 4, 1956—after the completion of the evidence and prior to rendition of judgment herein by the trial judge on September 18, 1957—the following stipulation, signed by counsel for all parties, was filed in the record:

3. The evidence shows that the floor furnace was installed during the 1940's.

"In this case, subject to objections and exceptions heretofore made and filed, it is stipulated and agreed that the painting destroyed in the subject fire, entitled "Two Sisters," was owned by Jean Despujols, Intervenor, in possession of Brown & Blackwood on loan for display purposes only, and that Despujols, if sworn, would testify that its value was in excess of Five Thousand and No/100 ($5,000.00) Dollars."

■ Thus, the petition of intervention was put at issue tacitly. Cf. K. & M. Store, Inc. v. Lewis, La.App., 22 So.2d 769; Henderson v. Hollingsworth et al., 158 La. 921, 105 So. 14.

The trial judge found that the experts who testified during the trial disagreed on the cause and origin of the fire. He said that because of this disagreement he found himself in a position of being unable to determine with any degree of certainty just what caused the fire. He then held that under the authority of Boudro v. United States Fidelity & Guaranty Co., La.App., 145 So. 294, and Dunn v. Tedesco, La.App., 93 So.2d 339; 235 La. 679, 105 So.2d 264, plaintiffs had not sustained the burden of proving their case by a preponderance of the evidence.

The following specification of errors is urged by plaintiffs-appellants:

"1. The District Court erred in holding that it was incumbent upon the lessee to prove negligence on the part of the lessor.

"2. The Court erred in failing to reach a decision as to causation of the fire.

"3. The Court erred in failing to apply the principles of law which this Honorable Court has so firmly established in cases of this nature involving damages sustained by a lessee while in legal possession of the leased premises."

"The law is well settled that a landlord is responsible for injuries sustained by his tenant because of vices or defects in the premises, whether or not he had actual knowledge of the damaged condition of the premises. * * *

"It is also clear that the law places the burden of proving the case by a preponderance of the evidence upon the plaintiff in such matters. * * *" Thompson v. Moran, 19 La.App. 343, 140 So. 291.

"The law is clear that the landlord is not responsible for any injuries that a tenant, or any one lawfully in the premises, may have sustained as a result of a fall, unless the fall was caused by a vice or defect in the premises. The mere fact that a tenant fell and was injured in leased premises does not raise any presumption of negligence on the

landlord's part, or that he failed to keep the building in a proper state of repair.

"The plaintiff bore the burden of proving her case by a preponderance of the evidence, * * *" Boudro v. United States Fidelity & Guaranty Co., La. App., 145 So. 294, 295. See, Curet v. Hiern, La.App., 95 So.2d 699; Potter v. Soady Bldg. Co., Inc., La.App., 144 So. 183; Gosselin v. Stilwell, La.App., 78 So.2d 235; Cosey v. Scott, 17 La. App. 680, 137 So. 361; Davis v. Shuster, La.App., 150 So. 424.

All parties herein agree that the fire originated in the area of the floor furnace. The grill was situated in plaintiffs' office on the first floor, and the galvanized metal box, draft diverter, and vent were suspended from the plastered ceiling of the basement directly below the office. There was no exterior venting. Air could enter the basement from a door, a stairway, windows, and an air conditioning vent.

▮ The burden of proof by a preponderance of evidence, under the above authorities, was upon the plaintiffs. It was incumbent upon them to prove that there was a defect or vice in the floor furnace for which the defendant was liable, or, that there was faulty installation of the floor furnace for which the defendant was liable. Additionally, plaintiffs had to prove that such defects caused the fire.

We have carefully read the lengthy and highly technical testimony of record with respect to the cause and origin of the fire herein, and we believe that the following summary of the trial judge is correct:

"The plaintiffs claimed the fire resulted from vices and defects in a floor furnace which formed a part of the leased premises, and in support of that position produced as witnesses Clyde J. Juneau, Charles Watson West, Jr., B. I. Hill, and Earl J. Norred. In rebuttal thereto the defendant relied upon the testimony of Raymond Oliver, T. G. Mangham, and John S. Malahy, Jr.

"Juneau is City Air Conditioning Inspector for the City of Shreveport, which position includes the inspection of heating units and floor furnaces. It was Juneau's opinion the fire was caused by a defect in the floor furnace on the premises. However, he also testified he was not a fire expert and was not capable of testifying to the origin or cause of a fire.

"West has been engaged in the air conditioning and heating business in the City of Shreveport since 1946. He testified that the floor furnace created a fire hazard which could have resulted in this fire. However, he admitted having no experience with fires or the causes thereof.

"Hill has been engaged in the heating and air conditioning business in the City of Shreveport for the past eight

years and testified that the heating unit was defective.

"Norred is a Deputy State Fire Marshal, having previously served on the Shreveport Fire Department for over thirty years. He testified he examined these premises the day before he was called to testify and in his opinion the defective floor furnace was the cause of the fire.

"For the past four years Oliver has been Assistant Chief of Fire Prevention for the Shreveport Fire Department, being actively engaged in the investigation of fires and the causes thereof. In addition to this, he has had twenty-one years experience as a fireman. He examined the premises the next morning after the fire and in his opinion this floor furnace did not constitute a fire hazard. It is Oliver's belief the fire was caused by some piece of furniture or other article being left on or too near the furnace opening so that it became overheated and ignited.

"Mangham is the First Assistant Fire Chief of the Shreveport Fire Department with thirty years experience as a fireman. He also examined the premises the next morning after the fire and in his opinion there was no defect in the floor furnace that could have started this fire. He agreed with Oliver that something was placed on or too near the heating unit and caught fire.

"Malahy is a graduate Mechanical and Electrical Engineer, having been actively engaged in the practice of his profession since 1939. In addition, he is a member of the Shreveport Air Conditioning Board which prepares and enforces regulations for heating units. He agreed with Oliver and Mangham that the origin and cause of the fire was not a defect in the heating unit."

Joseph Wm. Albert Richardson, a licensed master plumber, testified that his firm originally connected the gas to the heater (furnace) in 1946 or 1947. He said that while making plumbing repairs on the instant premises in October, 1954, he was requested to light the heater, and that at that time the furnace was in perfect shape although the thermostat had been removed. He stated that he notified the defendant to send an electrician to set the thermostat back on the wall. After the fire, he checked the pilot. Although he could not check the electric valve, he found that the pilot would still burn.

Joseph A. Malec, engaged as a foreman for Mid-Continent Steel Castings Company in their pattern shop at the time of trial of this case, testified that in October of 1954 he worked as a handy man, doing light maintenance work for defendant. His testimony is to the effect that the floor furnace was serviced and then functioned efficiently. He stated that electrical adjustments were made by an electrician.

There is proof in the record that the instant floor furnace was not vented to the outside of the building in accordance with the 1954 Standards of the National Board of Fire Underwriters for the Installation of Gas Piping and Gas Appliances in Buildings. There is testimony in the record to the effect that the venting was improper and could have caused the fire. There is other testimony of record to the effect that the furnace was a model of the 1940's but that its installation was not defective. Gosselin v. Stilwell, La.App., 78 So.2d 235. There is further testimony to the effect that owners of premises whose appliances are safely installed under one code are not forced to change their installations to conform with later codes. There is conflicting expert testimony with respect to the purpose of the furnace vent which protruded into the basement. It was the opinion of some of the experts that the vent emitted combustible gases which heated the ceiling to an igniting temperature. Other experts were of the opinion that the emission of gas was small and that the vent was of an intake nature. Plaintiffs' and defendant's testimony as to the place or spot where the fire actually commenced is also directly opposed.

Plaintiff George Blackwood testified:

"Yes, I arrived at the house, to work, between eight-thirty and nine on

that Sunday morning, December thirteenth, and I stayed there and cleaned —worked at the desk and cleaned the office, because on the previous day we had had a customer there and we had showed them samples of fabrics, and I went down that morning to do the work at the desk, to clean up the samples and put them back in the sample room." [4]

Blackwood stated that the Sunday morning was cold, and he raised the thermostat to between 72 and 74 degrees. He said that when he left he did not lower the thermostat. He testified that there were gas logs burning in the fireplace, which were left burning low. The doors of the room leading to other rooms were not closed. He said that there was a nine by twelve rug and a throw rug on the floor of the office. His testimony was affirmative to the effect that these rugs were tacked to the floor.

A consideration of the above evidence discloses that it is in hopeless conflict. Any determination as to the cause and origin of the fire would be purely speculative. We agree with the trial judge that a decision as to such cause and origin cannot be made with reasonable certainty. It follows that plaintiffs have neither discharged their duty nor borne their burden of proof by a preponderance of the evidence.

---

4. The Bureau of Fire Prevention Investigation Report states that the fire occurred at 12.48 A.M., December 13.

Reference to a 1954 calendar discloses that December 13th was a Monday.

"It is well settled that a litigant on whom the burden of proof rests, such as this plaintiff, must do more than make out a possible or probable case. The duty devolves upon him to show with reasonable certainty the existence and verity of his demand. * * *" Condet v. Cohen, La.App., 9 So.2d 257, 259. See, Dreher v. Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711; Desselle v. Avery, La.App., 73 So.2d 326; Dunn v. Tedesco, 235 La. 679, 105 So.2d 264.

Because of our conclusions, supra, the doctrine of res ipsa loquitur is not applicable to this case. See, Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704, 3 A.L.R.2d 1437.

Acting under Article 394 of the Code of Practice, the trial judge referred to the merits defendant's exception of no cause or right of action and plea of prescription filed to the intervention. As stated, supra, the intervention was tacitly put at issue by the filing of the stipulation.

While intervenor prayed for judgment in solido against plaintiffs and defendant, it is clear from the record that in reality he alligned himself with plaintiffs in an effort to obtain a judgment against defendant. In the original petition of intervention, it is alleged that intervenor suffered the loss of his painting solely from the fire caused by the negligence of plaintiffs and defendant. Intervenor made no allegations of negligence in his supplemental and amended petition of intervention, but he especially asked for reservation of his right to claim additional damages from plaintiffs in a separate action, having reduced his demand from $15,000 to $5,000, the value listed in plaintiffs' inventory. The purpose of the stipulation, supra, was to set forth the value of the painting at the time of the fire; it is silent upon the fault or negligence of the plaintiffs in connection with the fire.

Having found that plaintiffs did not bear their burden of proof with respect to the alleged negligence of defendant, the trial judge made no finding of negligence on the part of plaintiffs. After rejecting plaintiffs' demands, he rejected, without reasons, the demands of intervenor.

The stipulation, supra, admits that intervenor's picture was on loan; it states that it was destroyed by fire. However, it contains no statement as to the placement or care given the picture. Further, it does not set forth the terms of the agreement of loan between plaintiffs and intervenor.

Our jurisprudence has consistently held that a bailee must show that the loss of goods entrusted to his care did not occur through his fault; having exonerated himself from fault, the bailee is not liable to the bailor. Gibbons v. Yazoo & M. V. R. Co., 130 La. 671, 58 So. 505; Scott v. Sample, 148 La. 627, 87 So. 478; Poydras Fruit Co. v. Weinberger Banana Co., Inc., 189 La. 940, 181 So. 452; Luke v. Security

Storage & Van Co., La.App., 24 So.2d 692; Bradford v. Rapid Transfer & Storage Co., Inc., La.App., 46 So.2d 765; Livaudais v. Lee She Tung, 197 La. 844, 2 So.2d 232; Colgin v. Security Storage & Van Co., Inc., La.App., 15 So.2d 664.

■ In Jeter v. Lachle, 106 So.2d 808, 810, the Court of Appeal, Second Circuit, aptly stated:

"In this regard the measure of care toward the deposit is that as may be 'expected from a prudent administrator', as expressed in LSA–C.C. art. 1908 and presupposes 'the same diligence in preserving the deposit that he uses in preserving his own property,' as prescribed by LSA–C.C. art. 2937.

"Where the bailor has established the existence of the deposit and has proven injury or damage thereto, a sufficient prima facie case has been established against the depositary or bailee as to put him upon his defense. The burden is, therefore, upon the bailee or depositary to establish his freedom from fault or negligence or that he used due care. Holder v. Lockwood, supra; Hazel v. Williams, La. App., 80 So.2d 133; Alex W. Rothschild Co., Inc. v. Lynch, 157 La. 849, 103 So. 188; Short v. Lapeyreuse, 24 La.Ann. 45; Nicholls v. Roland, 11 Mart., O.S., 190.

"This situation is analogous to a situation where the doctrine of res ipsa

loquitur is applicable. In instances such as this, where the relationship of bailor and bailee has been established and damage or injury has been shown to the property constituting the deposit, the burden is upon the bailee or depositary to exonerate himself from the presumption of negligence or fault. Pacific Fire Ins. Co. v. Eunice Motor Car Co., Inc., 47 So.2d 403; Gugert v. New Orleans Independent Laundries, Inc., La.App., 181 So. 653; Davis v. Teche Lines, Inc., 200 La. 1, 7 So.2d 365; Leigh v. Johnson-Evans Motors, Inc., supra; Hazel v. Williams, supra." See, Cook & Co., Inc. v. Gulf Shipside Storage Corp., D.C., 177 F.Supp. 869.

■ The stipulation herein is meager, vague, and indefinite; as shown supra, it was filed in the record under unusual conditions. We believe that the furtherance of justice (Louisiana Code of Practice, Article 906; Succession of Singer, 208 La. 463, 23 So.2d 184; Klopstock & Co. v. United Fruit Co., 171 La. 296, 304, 131 So. 25, 27; Cf., State ex rel. Pope v. Bunkie Coca Cola Bottling Co., Inc., 222 La. 603, 63 So.2d 13) requires that the judgment of the trial court rejecting intervenor's demand against plaintiffs be reversed and set aside; and, that the cause be remanded for the purpose of adducing testimony with respect to the care given by Brown & Blackwood, bailees, to intervenor's picture during the period of bailment and at the time of the fire.

For the reasons assigned, the judgment of the trial court is affirmed, insofar as it rejected plaintiffs' and intervenor's demands against defendant; all costs with respect to these demands are to be borne proportionately by plaintiffs and intervenor. The judgment of the trial court is reversed and set aside, insofar as it rejected the demand of the intervenor, Jean Despujols, against plaintiffs; the case is remanded to the trial court to be proceeded with in accordance with law and the views herein expressed; all costs with respect to this demand are to await future determination.

SIMON, J., absent and not participating.

121 So.2d 78