TATE, Judge.
A house owned by O. B. Gregory was destroyed by fire while on a temporary location in the process of being moved from one area to another. The cause of the fire is unknown. The house was being moved by the defendant Lloyd Florane pursuant to a house-moving contract between him and Gregory, the owner of the house. Following the burning of the house, Gregory’s fire insurer (Southern Farm) paid him for the loss.
Southern Farm brings this subrogation suit against Florane, the house-moving contractor, to recover for the sums paid out. The district court held that, under the house-moving contract, the owner Gregory was intended to bear the risk of the unexplained loss. Accordingly, the court dismissed Southern Farm’s subrogation suit, which of course is founded upon its insured’s, Gregory’s, alleged right to recover for the loss of his house while in the custody of the defendant Florane. Southern Farm therefore appeals.
The principal questions of this appeal will be whether the owner (Gregory) or instead the house-moving contractor (Flo-rane) was intended to bear the risk of unexplained loss under the house-moving contract between the two, and whether parol evidence is admissible to show this to be the intended meaning of a contractual provision. Before discussing these issues, however, we deem it advisable to set forth' the facts, as well as certain preliminary, contentions of the parties.
*547 The evidence shows that in early January the house had been moved from its original location in Pleasant Hill, Louisiana, to near Black Lake in Natchitoches Parish, some thirty miles distant. Since the ground was wet, so that the heavy equipment loaded with a house would have bogged, the housemover had been unable to complete the move to the final destination, a camp-lot in the woods on Black Lake owned by Gregory. The house (which had been bought for $300 by Gregory) was left in a nearby field (with permission of the landowner) for about six weeks prior to the fire in which the house was destroyed. This temporary location was variously estimated as from ISO to 400 yards distant from the final destination of the house. The house had been tampered with the weekend before the fire, when the windows were opened by an unknown person.
On the day of the fire, the defendant Florane and his crew of three had gone to the house and had removed his housemoving trailer from under the house, since the trailer was needed elsewhere and since, due to the continued softness of the ground, he still could not complete the move of the house over the short remaining distance to Gregory’s camp-lot. The defendant and a member of his crew testified that when they left, after an hour or so, the house was not on fire, and that the crew had not entered the house or smoked around it or •otherwise exposed it to the hazard of fire. However, the forcefulness of this testimony is somewhat weakened by Florane’s unexplained failure to produce his other •two employees at the .scene of the fire, which (especially if, see below, he had the burden to disprove his own negligence) might give rise to an inference that the testimony of these employees may not have been as favorable to Florane. See Olivier’s Minor Children v. Olivier, 215 La. 412, 40 So.2d 803.
There was no grass near the temporary location, which was in a deserted area, and the house was not connected with either electricity or gas. The house was found burned to the ground at 6:00 P. M., while the defendant Florane’s crew had left the area at about 2:30 P. M.
In summary, the evidence can be said to indicate that the most probable cause of the fire destroying the house was some human agency, either carelessness or an intentional act. The human fault indicated could as reasonably have stemmed either (1) from some act by the defendant Flo-rane’s crew while they were in the process of removing Florane’s equipment from under the house or else (2) from the acts of an unknown person who tampered with the house after Florane’s crew left.
Southern Farm’s able counsel contends that the defendant Florane has the burden of proving that it was not fault on the part of his employees which caused the fire destroying the house. Counsel relies upon the strict duty of Florane as a compensated depositary (bailee) to safeguard property within his care, and upon jurisprudence to the effect that, when deposited property is damaged while within the custody of a depositary under circumstances indicating the damages were caused' by fault, a prima facie case has been established against the depositary, and the burden of proof shifts to him to show that the loss did not occur through his own negligence; for, under such' circumstances, the depositary must establish his own lack of fault in order to exonerate himself from liability for damage to the deposited object while it is in his custody. LSA-Civil Code Articles 2937, 2938; Brown & Blackwood v. Ricou-Brewster Building Co., 239 La. 1037, 121 So.2d 70, and cases therein cited; Indiana Lumbermen’s Mutual Insurance Co. v. Humble Oil & Refining Co., La.App. 2 Cir., 170 So.2d 264.
*548 On the other hand, the defendant-appel-lee Florane argues that a clause in the housemoving contract was specifically intended to relieve him of the risk of unexplained damage to the house while parked on temporary location. Florane thus argues that therefore, in order to recover, the appellant has the burden of proving that the house burned because of negligence or fault on Florane’s part.
Proof by a preponderance of the evidence requires that the evidence as a whole shows that the fact sought to be proved is more probable than not. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276; Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395; Perkins v. Texas & N. O. Railway Co., 243 La. 829, 147 So.2d 646. Therefore, Florane argues, since under the evidence it is at least equally probable that the fire resulted from the act of an unknown person after Florane’s employees left the area, the plaintiff has not borne its burden of proving by a preponderance of the evidence that the house was damaged because of fault on Florane’s part.[1]
The trial court sustained the defendant Florane’s contentions and dismissed the suit against him. We affirm. We agree with the trial court that a clause in the house-moving contract was specifically intended to exculpate Florane from any unexplained loss of the house while it was parked on a temporary location.
The clause in the contract with this effect was especially inserted by typewriter on the reverse of a printed-form housemoving contract. The clause reads: “It is agreed between mover [Florane] and owner [Gregory] of house that should any delay in route occur which makes it necessary to place house on temporary location, that movers insurance will cease being in effect immediately and shall remain as such until removing begins.”
The plaintiff forcefully contends that this clause cannot have the meaning ascribed by the defendant and the trial court. Counsel argues that the agreement is unambiguous in its provision “that movers insurance will cease being in effect” should it be necessary to place the house on a temporary location, and does not in terms refer to other than the mover’s “insurance”. (Further, even if the clause be considered ambiguous, the plaintiff suggests that the ambiguity should be construed against the person preparing the contract, in this case Florane.)
Ambiguity of a contractual provision may result not only because of different interpretations which may be deduced from the dictionary meanings of the words used; it may also result from the context of the contractual provision within the agreement, insofar as, in the context of the entire agreement, the provision may give rise to doubt as to the intent of the parties in incorporating it in the contract, and doubt as to the intended meaning of the provision in the context of the entire contract. 3 Corbin on Contracts (1960), Section 543A (1964 Pocket Parts) “What is Ambiguity?”
In the present case, the clause under consideration was inserted by typewriter in a printed-form contract. The printed-form contract relevantly provided that the defendant Florane was to move Gregory’s house from Pleasant Hill to Black Lake for the price of $400, but it did not expressly *549 provide for responsibility for damage to the house while in transit. The contract as a whole did not, for instance, require either party to maintain insurance to cover damage to the house while in transit.
As inserted in the context of the present contract, we therefore believe to be ambiguous the provision “that the movers insurance shall cease to apply” if the house be parked on a temporary location. As the defendant-appellee contends, the provision could mean, for instance, that the mover’s insurance would not cover loss while the house was on temporary location, intending to indicate that the owner (Gregory) was to obtain insurance to cover such loss. Perhaps, as the plaintiff-appellant suggests, it could mean that the defendant’s insurance was not to cover unexplained loss while on temporary location, so that the defendant was to be individually responsible for such loss. Again, was the clause inserted to be merely descriptive of the insurance coverage afforded by policies issued to the defendant house-mover, or was it instead inserted with the intention of regulating rights between the house-owner and the house-mover or their respective insurers ? In our opinion, these various reasonably possible meanings of the clause render it ambiguous, without a certain and definite meaning which can readily be ascertained from the words themselves of the clause.
This being so, parol evidence may be admitted to show the true intention of the parties. “When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.” LSA-Civil Code Article 1950. Although parol evidence is not admissible to explain an unambiguous contract, nevertheless, “When the terms of the written contract are susceptible of more than one interpretation * * * or where there is uncertainty or ambiguity as to the provisions of the contract, or where the intent of the parties cannot be ascertained from the language employed, parol evidence may be introduced to show what was in the minds of the parties at the time of the making of the contract and to show their intent in doing so. * * * [Citations omitted.]” Marcann Outdoor, Inc. v. Hargrove, La.App. 3 Cir., 140 So.2d 815, 818.
The uncontradicted parol testimony concerning the clause is as follows:
The clause was specifically inserted because it was reasonably certain, due to the rainy season, that it would be necessary to leave the house on a temporary site before completing the move. According to Flor-an e, the intended meaning of the clause was that the mover’s liability would cease [2] during the period the house was required to be left on temporary location (see Florane’s testimony, Tr. 35, 36, 73), at least in the absence of negligence of the defendant house-mover causing the loss. For this reason, according to Florane’s testimony, he advised Gregory to secure insurance to protect himself from loss while the house was on a temporary location in the deserted Black Lake area. Tr. 32.
Gregory’s testimony does not contradict Florane’s explanation of the purpose and intent of the clause in question. In fact, Gregory’s testimony is corroborative of it. He admitted that the clause was specifically inserted in view of the probability that the house would be left on temporary location befoie completion of the move. Tr. 70. He also admitted that he himself obtained fire insurance before moving it to Black Lake, pursuant to Florane’s suggestion made at the time the house-moving contract was confected and the clause in question was inserted. Tr. 66.
*550 It is to be noted that both parties testified that the stipulation in question was inserted in the printed contract at the request of Florane, in view of the probability that the house would be left at a temporary location before completion of the entire move. It is unlikely that Florane would have insisted on a clause exculpating his insurer but intended to leave him individually liable instead of his insurer. We think that this circumstance likewise corroborates Florane’s version of the intended meaning and effect of the clause as being to shift from him to Gregory the risk of unexplained loss of the house while on temporary location, with Gregory (rather than Flor-ane) to secure insurance against such loss. An obvious reason for Florane’s insistence on this provision was the economic impossibility, for the small price ($400) of the house-moving contract, to safeguard the house for the extended period during the rainy season during which it was to be left unattended on temporary location in a deserted area.
With this explanation of the contract as permitted by admissible parol evidence, the agreement is no longer doubtful so as to require a construction against Florane as the party contracting the obligation or preparing the contract.
In view of this uncontradicted explanation proving the intended meaning of the ambiguous clause, we think the trial court correctly held that Florane was not liable for the loss of the house due to unexplained fire while on temporary location, where the proof does not show that the house burned through negligence on his part.
For the foregoing reasons, we affirm the judgment of the trial court dismissing the suit seeking to recover from Florane for the loss of the house, at the cost of the plaintiff-appellant.
Affirmed.

. It follows that, similarly, if the contractual provision relied upon does not have the effect of relieving Florane of the risk of unexplained loss, then Florane as a compensated depositary has not borne his burden of proving lack of fault on his part in order to exculpate himself; for, under the evidence, Florane has not proved that it is “more probable than not” that the fire resulted from other than fault on the part of his employees, since such fault is equally probable as a cause of the fire as is the act of an unknown person tampering with the house after Florane’s employees left the area.

. As Florane explained the meaning of the clause at the trial, Tr. 35, “My insurance would cease. In other words, my liability would cease on him.”