McBRIDE, Judge.
On November 15, 1957, A. J. Lang parked a 1957 truck on the commercial parking lot operated by defendant at 226 Burgundy Street, New Orleans,. and the evidence makes it certain the vehicle was removed therefrom by some unknown and unauthorized person between 7:30 and 7:45 a. m.; and whilst in the possession of the taker, it was damaged to the extent of $566.05, which amount was paid to Lang by plaintiff, the theft insurer of the vehicle, which, as Lang’s subrogee, has sued defendant for said loss alleged to have resulted from “the failure of the defendant and/or his employees to preserve the vehicle entrusted to their keeping.” Defendant filed a general denial to plaintiff’s allegations.
After trial, plaintiff recovered judgment as prayed and defendant appeals.
The evidence adduced goes to show these facts: Defendant had been in the parking business at said location for 29 years; Lang, employed at a nearby establishment, had been defendant’s patron for 3 or 4 years. At 7:10 on the morning in question Lang placed his new pickup truck on the parking lot, leaving the key in the ignition lock and then proceeding to his place of employment. The vehicle was there when Kelly, a fellow employee of Lang, parked his own car between 7:30 and 7:45 a. m. When defendant arrived at 7:45 he did not see the truck, so it cannot be doubted it was stolen during the brief period between the parking of Kelly’s car and the arrival of defendant. The theft was not discovered until late in the afternoon when Lang called to claim his truck; Lang paid the parking fee, but the truck could not be located on the premises notwithstanding a meticulous search. Report was made to the police who later found the vehicle abandoned elsewhere in a wrecked condition.
The parties are in complete agreement with respect to the codal law which deals *317 with the obligation of a depositary as prescribed by Art. 2937, LSA-C.C., which binds him “to use the same diligence in preserving the deposit that he uses in preserving his own property,” and Art. 2938, LSA-C.C., which renders said preservation rigorously enforceable if “it has been agreed that he (the depositary) shall have a reward for preserving the deposit.”
The disputed aspect of the case is whether a contract of deposit would exist before 8:00 a. m. on the date mentioned. In short, defendant’s contention is that the parking lot was not open for business when Lang left the car, so there was no contract of deposit; hence, he is not responsible for any loss which Lang sustained. He asserts Lang was entirely cognizant of the circumstance the vehicle would be unprotected until the arrival of defendant or his employees at 8:00 a. m. and there was negligence on Lang’s part in leaving the ignition unlocked.
On the other hand, it is argued on behalf of plaintiff there w,as a tacit agreement between Lang and defendant to the effect that upon the placing of the vehicle on the lot, it came under the charge of defendant and he was legally bound for its preservation.
We attach no importance to the fact that Lang left the ignition unlocked, for the reason he states he had previously been instructed by defendant to do so in order to further the moving of the vehicle from time to time whenever such became necessary in the furtherance of defendant’s business.
Photographs in the record show that defendant has two conflicting signs posted adjacent to each other in the lot, the larger and most legible of which contains the following lettering:
“Rex No. 1 Parking *
All Day $1.00
6 AM to 10 PM $1.00
1 to Hours 400
Simonize Here” '
The other, of smaller dimensions, cannot be deciphered from the photograph, but, according to counsel, it recites:
“Rates 8 AM to 6 PM,
1 hour 300
2 hours 400
3 hours 500
over 3 hours 750
over 10 hours $1.00
We close at 10 PM”
Defendant insists the larger sign, indicating the establishment was open from 6:00 a. m. to 10:00 p. m., had been erected some 15 years ago and was inoperative because it was superseded 3 or 4 years ago by the smaller sign, which changed the parking hours to between 8:00 a. m. and 10:00 p. m. Of course, defendant is relying for success on the smaller sign which he claims brings home to his customers his business hours are between 8:00 a. m. and 10:00 p. m.
We can think of no reason to say Lang was bound by the recitals of the smaller and less conspicuous sign, which quotes parking rates from 8:00 a. m. to 6:00 p. m., or to say that the larger and more legible sign, which specifically states parking hours were from 6:00 a. m. to 10:00 p. m., should be ignored. Whatever confusions the maintenance of the two signs might create in the minds of his customers were of defendant’s own making, and if there be ambiguity whether the contract of deposit was to commence at 6:00 a. m. or at 8:00 a. m., such must be construed against defendant. We think the contract of deposit came into being upon Lang’s leaving his vehicle with defendant on the morning in question.
The parking area is “L”-shaped and Lang stated positively he did not know that defendant or his attendants were not present that morning, pointing out that he could not see all portions of the premises. It was never shown, nor have we reason to believe, that Lang was cognizant *318 that his car would be unattended or unprotected.
None of the authorities defendant cites are pertinent.
The case was properly decided below. Defendant, as the compensated depositary who failed to fulfill the obligation imposed upon him by law of preserving the depositor’s property as he would his own, is liable for the loss attributable to the theft of the property.
The judgment will be affirmed.
Affirmed.