252 So.2d 461 (1971)
CHRYSLER CREDIT CORPORATION
v.
Clayton CAULFIELD, Sr.
v.
DIXIE BUICK, INC.
No. 4553.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
Dissenting Opinion August 25, 1971.
Rehearing Denied October 6, 1971.
Writ Refused November 8, 1971.
*462 Roger B. Jacobs, New Orleans, for plaintiff-appellee, Chrysler Credit Corporation.
Bruce D. Burglass, Metairie, for defendant-appellee, Clayton Caulfield, Sr.
Stahl & Berke, Kenneth J. Berke, New Orleans, for third-party defendant-appellant, Dixie Buick, Inc.
Before LEMMON, GULOTTA, and BOUTALL, JJ.
GULOTTA, Judge.
On June 24, 1968, defendant-appellee, Clayton R. Caulfield, Sr., purchased a used 1966 Chevrolet sedan from Dixie Buick, Inc., third-party defendant and appellant. This was a credit sale financed through plaintiff-appellee, Chrysler Credit Corporation. Caulfield executed a note and chattel mortgage in the sum of $2,554.30 after having made a down payment to Dixie in the sum of $300. Plaintiff on October 10, 1968, instituted suit for executory proceedings against Caulfield who was in default in payment of the monthly installments of principal and interest on the note.
Defendant Caulfield answered the suit seeking and obtaining an order restraining the sheriff from seizing and selling the automobile. Eventually, the automobile was sold by the sheriff, with appraisement, for $800 on January 22, 1969.
Following the sale, plaintiff brought suit for a deficiency judgment against defendant Caulfield who then third-partied Dixie Buick alleging that the automobile was "unusable," and was in a "totally worthless condition," and that "[w]hile in the possession of Dixie Buick, Inc., the * * * vehicle was stripped of its parts and accessories thereby decreasing the value of the automobile substantially prior to the seizure and sale by the sheriff * * *."
Dixie Buick, Inc., answered, and after denying the allegations, brought a third party demand against Caulfield for costs of repairs to the automobile.
On the main demand the trial court ruled in favor of plaintiff, Chrysler Credit Corporation, and against the defendant, Clayton Caulfield, Sr., in the sum of $1,489.60 plus interest thereon at the rate of 8 per cent per annum from July 7, 1968, until paid and attorneys' fees of 25 per cent of $2,554.30 plus interest; and for costs. Judgment on the third party demand was rendered in favor of third party plaintiff-appellee, Caulfield, and against third party defendant, Dixie Buick, Inc., for all sums which Caulfield was obligated to pay to Chrysler Credit Corporation on the main demand. The third party demand by Dixie *463 Buick, Inc., against Caulfield was rejected and dismissed.
The trial judge reasoned that when it received the Caulfield vehicle, Dixie Buick became a compensated depositary, which having failed to exonerate itself from the presumption of negligence or fault and having failed to carry the burden of exercising due care was hence liable for the amount for which Caulfield was cast in the deficiency judgment.
The issue before us therefore is threefold: whether the trial court erred in holding that (1) Dixie Buick, Inc., was a compensated depositary; (2) that as such Dixie failed to use the degree of care required of a compensated depositary; and (3) was thus liable for the amount for which Caulfield was cast in the deficiency judgment.
The automobile was purchased on June 24, 1968, under a special and express warranty which provided:
"The sale of the above used car is made with the explicit warranty that Dixie Buick, Inc. will repair in their shop at no cost to the purchaser any defects that should occur through normal use and wear to the motor, transmission, or rear end for one thousand miles or thirty days from the date of sale whichever occurs first. All other repairs to the electrical, braking, or wheel systems and/or the repairs of accessories due to their failure from normal wear and use can be done at a 25% discount on parts and labor for ninety days from date of sale or three thousand miles, whichever occurs first. * * *" (Emphasis added.)
The car was returned to Dixie on June 27, 1968, for repair of the lighting system as the wiring in the car had failed and Caulfield was thus unable to obtain a brake tag. Caulfield testified that after he obtained the car from Dixie Buick, the repairs proved to have been improperly made and the car was eventually repaired by a mechanic friend of Caulfield's at no cost to Dixie Buick. Defendant continued to use the automobile without complaint until July 23, 1968, the 30th day following the purchase when defendant returned the car complaining that the valves had burned out. Because at this time the automobile's speedometer registered 2,121 miles more than when purchased which exceeded the maximum amount of miles covered under that part of the warranty which provides a guarantee "for one thousand miles or 30 days from date of sale," Dixie Buick disclaimed any obligation to make the repairs.
Counsel for defendant Dixie Buick urges that despite the fact that the car was out of warranty, Dixie offered and agreed to repair defendant's car allowing him a 25 per cent discount on parts and labor. It appears that this offer was as per the second portion of the warranty, supra, providing for "a 25% discount on parts and labor for ninety days from date of sale or three thousand miles"; however, the complaint of Caulfield; i. e., the burned out valves, does not seem to be encompassed under the 90-day part of the warranty. Irrespective of that, Mel Jacobson, President and General Manager of Dixie Buick, Inc., and Caulfield both testified that Mr. Jacobson offered to repair the valves in the Caulfield vehicle at a 50 per cent discount. Thus, Dixie Buick, Inc., in effect, agreed to pay 50 per cent of the cost of repair. Mr. Jacobson stated that since he had made the offer, although the repairs did not in fact come under the warranty, he assumed payment for half of the repair cost to the extent of $79.10 from his own personal account.
It is our opinion that regardless of whether the agreement was for a 25 per cent discount, as suggested by appellant's counsel in brief, or for repairs with a 50 per cent discount, as indicated by the testimony, Dixie Buick was nevertheless to be compensated in part for the services it was to render to Caulfield. Dixie was therefore a compensated depositary.
In the case of Lumbermens Mutual Casualty Company v. Wallace, 138 So.2d 247 (La.App. 4th Cir. 1962) the court concluded that defendant was a compensated depositary. *464 The cour therein held that even when the deposit of a trailer, boat and motor was a gratuitous one where defendant would not charge for repairs but was only accommodating the owner; nevertheless, since defendant intended to perform the work gratuitously to further the good will of his business, he thereby became a "compensated" depositary.
In view of the Lumbermens holding as to what constitutes a "compensated" depositary, Dixie Buick would clearly fall within this broad classification. See also: Livaudais v. Lee She Tung, 197 La. 844, 2 So.2d 232; Emmco Insurance Company v. Bagnerise, La.App., 124 So.2d 316; Leigh v. Johnson-Evans Motors, Inc., La.App., 75 So.2d 710; Louisiana Fire Ins. Co. v. R. W. Hodge & Sons Garage, La.App., 42 So.2d 560; Miller v. Hammond Motors, Inc., La.App., 40 So.2d 29; Kaiser v. Poche, La.App., 194 So. 464; Marine Ins. Co., Limited, of London, England v. Rehm, La.App., 177 So. 79.
Thus, from that point in time when Caulfield deposited the vehicle with Dixie Buick to be repaired, Dixie was placed in the position of a compensated depositary whose obligations and duty of care are determined by LSA-R.C.C. arts. 1908, 2937 and 2938.
LSA-R.C.C. art. 1908 requires that the degree of care to be exercised by the holder of the goods as what is to be expected of a prudent administrator. LSA-R.C.C. art. 2937 says:
"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
In reference to art. 2937, supra, LSA-R.C. C. art. 2938 further provides:
"The provision in the preceding article is to be rigorously enforced:
* * * 2. If it has been agreed that he [the depositary] shall have a reward for preserving the deposit. * * *"
The interrelationship between these articles and the obligation which they impose on the compensated depositary were discussed in Home Insurance Co. v. Southern Specialty Sales Co., 225 So.2d 776, 780 (La.App. 4th Cir. 1969):
"* * * The obligation of a depositary is to be determined under the applicable provisions of LSA-C.C. Arts. 1908, 2937 and 2938. Although Art. 2937 of the Civil Code does provide that the depositary `* * * is bound to use the same diligence in preserving the deposit that he uses in preserving his own property', this does not mean that if he is careless in preserving his own property, he may also be careless, without liability, in preserving the deposit. As read together with Civil Code Art. 1908 (which requires that the person who had the thing in his keeping shall take the care of it that could be expected from a prudent administrator), Civil Code Art. 2937 simply means that the depositary must use the ordinary care which may be expected of a prudent man. And under Civil Code Art. 2938, this requirement must be rigorously enforced when the depositary is a compensated depositary." (Emphasis added.)
The court in Home Insurance Co. at 780 cited the Lumbermens decision, supra, to fortify its holding that the compensated depositary was liable in damages for failure to use ordinary care and stated:
"Our settled jurisprudence is that where the depositor proves the deposit was made and while in the custody of the depositary the property deposited is damaged, lost, or cannot be returned, a prima facie case is established against the depositary and the burden then is upon the latter to exonerate himself from the presumption of negligence or fault." (emphasis added)
See also: Brown & Blackwood v. Ricou-Brewster Building Company, Inc., 239 La. 1037, 121 So.2d 70; Alex W. Rothschild Co., Inc. v. Lynch, 157 La. 849, 103 So. 188; *465 Great American Indemnity Company v. Ford, La.App., 122 So.2d 111.
We find that defendant Caulfield as depositor in the case at bar has set up a prima facie case of negligence against Dixie Buick, Inc. It is uncontroverted that Caulfield deposited his automobile with Dixie for repair of burned out valves on July 23, 1968, and that while the vehicle was in Dixie's custody various parts were stolen from the vehicle devaluing it appreciably. Mr. Jacobson attested to the list of things in his file which were removed or stolen from defendant's car while it was on the Dixie lot for storage purposes. The missing parts included bucket seats, the tracks on which the bucket seats are placed, the steering wheel and retaining ring, the chrome valve covers, the battery and the carburetor air filter. Mr. Jacobson's records dated the theft of these items on September 23, 1968.
Having sought advice of counsel during the interim period, following his return of the vehicle on July 23, 1968, Caulfield testified that in acting upon this advice he decided to go to Dixie Buick in order to make a settlement regarding the repair bill. It was only then that Caulfield discovered the theft of items from the vehicle. Dixie Buick, Inc., had never informed him previously of the theft.
We fail to see how Dixie Buick exonerated itself from the presumption of negligence as counsel for Dixie contends. We note that the trial court did not accept the explanation of Dixie that the Caulfield vehicle had been placed in an area also containing new vehicles and that this area had on 8 foot high fence, was padlocked and patrolled by watchmen, and that the theft occurred within this protected area.
We further note in addition that, according to Caulfield, when Caulfield went to pick up his car under advice of his attorney that the "thing was settled," the vehicle was not located on the lot referred to by Mr. Jacobson, but at an ESSO service station somewhere on Barataria Blvd. It is not clear, however, how long the vehicle had been at that location. The explanation given does not change the conclusion that Dixie Buick had acted carelessly as a compensated depositary of the subject vehicle. This carelessness resulted in the theft of numerous parts of the vehicle appreciably affecting the value of the car. We do not find that Dixie Buick has sufficiently rebutted the presumption of negligence and thus it must suffer the loss occasioned by lack of due care. Home Insurance Co. v. Southern Specialty Sales Co., supra.
The next question is whether Dixie should be held responsible for the full amount of the deficiency judgment including attorney fees and costs or whether it should be held responsible only to the extent that the automobile suffered damage by reason of the theft while the car was in the possession of Dixie. We are of the opinion that the trial court properly cast Dixie for the full amount of the deficiency judgment including attorney fees and costs.
The automobile had been brought to Dixie in July, 1968. Caulfield made no payments on the note while the automobile was in possession of Dixie awaiting the return of the vehicle in a repaired condition. The record shows that Dixie maintained possession of the vehicle and delayed either making the repairs or notifying Caulfield that it had made the repairs at least until September, 1968. Thus, the defendant's delay in paying on the note was a result of his uncertainty as to whether Dixie had repaired his automobile. Had Dixie acted immediately and returned the repaired vehicle within a reasonable time, any delay in payment on the installments would not have been attributable to Dixie. However, under the present facts, we feel the necessity for the suit arose because Mr. Caulfield was awaiting notification from Dixie who delayed acting. We find it significant that suit for executory process was not instituted against Caulfield until October 10, 1968, while according to the terms of the note Caulfield was in default on August 7, 1968, the date the first installment was due.
*466 It is apparent that the delay in repairing the car was the reason for its remaining on Dixie's lot through September, 1968. A vehicle standing idle for months naturally depreciates in value. The vehicle's value was further diminished by the theft which occurred while it was deposited with Dixie. We feel it was Dixie's responsibility to replace the stolen parts and thereby put the automobile in the same condition that it was before the theft. This Dixie should have done prior to the Sheriff's sale. Having failed to do so and having caused the vehicle to remain on its lot for months, it is liable to the full extent of the deficiency judgment, including attorney fees and costs.
For the reasons assigned, the judgment of the trial court is affirmed. The cost of the proceeding is to be borne by third-party defendant and appellant, Dixie Buick, Inc.
Affirmed.
LEMMON, Judge (dissenting in part).
I disagree with the majority on the measure of damages resulting from Dixie's negligent conduct. Since the parties stipulated that Chrysler Credit is a holder in due course of the note given in partial payment for the purchase of the car, any amount due by Caulfield to Chrysler Credit, either on the note or on the suit for deficiency judgment, is completely unrelated to the amount of damages sustained by Caulfield as a result of Dixie's negligence. Indeed, I have grave misgivings about the propriety of the third party demand, since the third party defendant was not liable, as a negligent compensated depository, for all or part of the principal demand (see LSA-C.C.P. art. 1111), although the third party demand was probably proper in the pleading stage of the trial based on Caulfield's assertion of a redhibitory defect.
The car depreciated in value because of the theft which occurred on Dixie's premises, and Dixie is legally responsible for the amount of this diminution in value and any other damages resulting from the theft. The diminution, however, should not be measured any differently because Caulfield financed the purchase of the car than if he had bought the car with cash from a savings account.
The majority bases their award of damages in the full amount of the deficiency judgment on the theory that Dixie should have, prior to the Sheriff's sale, restored the vehicle to the same condition that it was before the theft (or presumably should have paid Caulfield the value of this restoration). While I agree that the car brought a lesser price at the judicial sale because of the damages for which Dixie is legally responsible, I cannot agree that Dixie was responsible for Caulfield's failure to pay his note which resulted in the judicial sale.
Caulfield defaulted on his note on July 5, or 18 days before the car was placed in Dixie's custody and 80 days before the theft occurred. At the time of the theft he was three installments in arrears.
Caulfield testified that he refused to make payments on the note to Chrysler Credit until Dixie repaired the automobile under the warranty at no expense to him. After he employed counsel, an agreement was reached whereby the wholesale cost of the repairs ($158.20) was to be evenly divided between Caulfield and Dixie. This agreement, which effectively resolved any question as to warranty, occurred after the repairs were completed in July, but before the theft took place on September 23. Therefore, Caulfield simply disputed the amount of the charge for the repairs from the time that Dixie took custody of the car until the time of the theft.
Had executory proceedings been filed and seizure made prior to the theft, Caulfield would have been liable for the full amount of the note, including interest, fees and costs, and Dixie would have had no liability whatsoever. Dixie's liability only arose because of the theft and should be limited to damages caused by the theft. Since the record does not contain any evidence on the value of these damages, I would remand for such a determination.