295 So.2d 206 (1974)
INSURED LLOYDS et al., Plaintiffs-Appellees,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellant.
No. 4530.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
*207 St. Paul Bourgeois, IV, and Joel Gooch, Lafayette, for defendant-appellant.
Dubuisson, Brinkhaus, Guglielmo & Dauzat by Jimmy L. Dauzat, Opelousas, for plaintiffs-appellees.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
DOMENGEAUX, Judge.
This is an action for damages for the partial destruction of an automobile engine by fire while said automobile was in the possession of a Ville Platte, Louisiana, garage for repairs. The plaintiffs are Esward Bordelon, the owner of the vehicle, and his personal comprehensive insurer, Insured Lloyds, who became subrogated to the rights of Bordelon by paying repair bills on the vehicle in the amount of Two Hundred Forty-three and 46/100 ($243.46) Dollars. Defendant is the liability insurer of the garage. After a judgment in favor of Bordelon in the sum of Fifty ($50.00) Dollars [representing the amount deductible on his own comprehensive insurance policy] and Insured Lloyds in the aforementioned sum of Two Hundred Forty-three and 46/100 ($243.46) Dollars, the defendant has appealed.
The facts material to the issues presented, concerning which there is little or no dispute, may be stated as follows: On the night of December 22, 1970, Mrs. Esward Bordelon was enroute to Chicot State Park when the 1968 Chevrolet Impala she was driving stalled and would not restart. Shortly thereafter her husband Esward arrived, attempted also to start the automobile without success, and then through the help of the Ville Platte Police Department secured a wrecker from Pitre Ford Co. in Ville Platte. During the attempts to start the automobile both Mr. and Mrs. Bordelon testified that the engine would "turn over" but would not start. In addition neither smelled gasoline or smoke, except for Mr. Bordelon detecting a small gasoline odor when he pumped the accelerator at one instance during the attempted starting. It was also Esward's testimony that he opened the hood of the vehicle but darkness prevented him from determining what was wrong. He further stated that he had owned the car for approximately one year, *208 that the only repair previously done to the vehicle was a "tune-up" about six months prior thereto, and that the car had run very well up to that day, never stalling or catching fire.
The Chevrolet was towed to the lot at Pitre Ford Co. and remained there until the next morning. Sometime early that morning Mrs. Bordelon called Pitre Ford, talked to the shop foreman, and told him her car had stopped, that the wrecker had pulled it to their garage, and that she wanted them to fix it. In addition the wrecker operator told the service manager upon arriving at work that he had hauled the car in the night before because it had stalled or quit on its owner and that it was there to be repaired.
In turn the service manager told a mechanic, Raoul Fontenot, that the particular automobile had stopped on the road the night before and had to be towed in and instructed him to start the vehicle and determine the repairs needed.
Thereupon Raoul entered the vehicle and started it immediately placing it into gear to drive it into the shop. Concurrent therewith smoke and flames erupted and a gasoline type "explosion" occurred under the hood. The employees of Pitre Ford Co. used several fire extinguishers to put out the blaze.
No attempts were made to determine the exact cause of the fire, although Pitre Ford did engine repair work on the vehicle, the bill totalling Two Hundred Ninety-three and 46/100 ($293.46) Dollars.
On this appeal defendant's counsel alleges essentially that the doctrine of res ipsa loquitur is inapplicable and that plaintiffs have failed to show negligence on the part of the garage personnel. In the alternative it is argued if res ipsa loquitur is applicable, defendant has proven by a preponderance of the evidence that due diligence and care was used by the garage mechanics under the circumstances.
We need not however decide whether the doctrine of res ipsa loquitur is applicable to the facts herein. For the relationship between Pitre Ford Co. and Esward Bordelon was clearly that of compensated depositary and depositor or bailee and bailor (terms which are used interchangeably in our jurisprudence.) Zesiger v. Dean, 247 So.2d 222 (La.App. 4th Cir. 1971); Taylor v. Haik, 208 So.2d 433 (La.App. 4th Cir. 1968); Baker v. Employer's Fire Ins. Co., 201 So.2d 349 (La. App. 2nd Cir. 1967); Johnson v. Supreme Truck & Trailer Service, 119 So.2d 660 (La.App. 2nd Cir. 1960).
The obligation of a depositary is to be determined under LSA C.C. Arts. 1908, 2937, and 2938, which read as follows:
Art. 1908. The obligation of carefully keeping the thing, whether the object of the contract be solely the utility of one of the parties, or whether its object be their common utility, subjects the person who has the thing in his keeping to take all the care of it that could be expected from a prudent administrator.
This obligation is more or less extended with regard to certain contracts, the effects of which, in this respect, are explained under their respective titles.
Art. 2937. The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.
Art. 2938. The provision in the preceding article is to be rigorously enforced:
1. Where the deposit has been made by the request of the depositary.
2. If it has been agreed that he shall have a reward for preserving the deposit.
3. If the deposit was made solely for his advantage.
4. If it has been expressly agreed that the depositary should be answerable for all neglects.
*209 In addition our jurisprudence has treated a compensated depositary as one against whom the obligation of preserving the property is rigorously enforced. Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La. 1973).
In fact once the existence of a deposit is established as well as the loss or damage to the property deposited, a presumption arises that the same resulted from the depositary's lack of due care, negligence, or fault and the burden is then on the depositary to exonerate himself from such negligence or fault. Coe Oil Service Inc. v. Hair, supra; Federal Insurance Co. v. C & W Transfer & Storage Co., Inc., 282 So.2d 563 (La.App. 4th Cir. 1973); Chrysler Credit Corporation v. Caulfield, 252 So.2d 461 (La.App. 4th Cir. 1971).
Although this situation is analogous to that where the doctrine of res ipsa loquitur is applicable, i. e. the burden shifts to the defendants to explain or pay, the principles have in fact been clearly differentiated[1] by our courts. Brown & Blackwood v. Ricou-Brewster Bldg. Co., 239 La. 1037, 121 So.2d 70 (1960); Baker v. Employer's Fire Ins. Co., supra; Jeter v. Lachle, 106 So.2d 808 (La.App. 2nd Cir. 1958).
Thus in the instant case it was incumbent upon the defendant to establish that its insured, as depositary, was free of negligence or fault regarding the fire damages sustained to the Bordelon vehicle. Without giving written reasons, the trial judge found the evidence to be in favor of the plaintiffs and against the defendant. We find no manifest error in his conclusion.
The defendant offered no evidence to show that the actions taken by the mechanics herein were reasonable and proper under the circumstances, much less proof that what they failed to do was in itself not negligent conduct on their part. On the other hand, the record discloses facts and circumstances which we are unable to reconcile with due care and freedom from fault on the part of the garage personnel. Although the mechanics may arguably have done nothing to intentionally start the fire they in turn did nothing to prevent it. Raoul Fontenot had been an automobile mechanic for over thirty years. Ironically the first step he took to repair the car which wouldn't start the night before was to get in and start the automobile. No visual inspection was made so as to determine possible malfunctions, wiring problems, or accumulation of gasoline under the hood. Neither did he look underneath the car to check for oil and gas leaks. Yet by his own testimony he stated fires like this had happened to him before and that there must have been a large accumulation of gasoline under the hood to cause what transpired. However, he testified he did not smell gas nor did he pump the accelerator in starting the engine. Although Fontenot testified he did not know what actually happened, inasmuch as he didn't raise the hood or inspect the engine after the fire to ascertain the possible cause, he gave several explanations as to what could have caused the fire. These included the carburetor flooding and overflowing on the motor which could have been caused by a piece of sand lodged underneath the needle valve in the float portion of the carburetor. In addition he stated that as a result of a short in either the ignition system or the battery cables a spark could have then started the fire. Under these circumstances we feel the defendant has failed to *210 refute the presumption of negligence on the part of the garage personnel.
For the above and foregoing reasons the judgment of the trial court is affirmed at defendant-appellant's costs.
Affirmed.
NOTES
[1] Despite this differentiation and although many circumstances often call for the application of both principles, the jurisprudence is replete with cases which have used the two principles interchangeably without making any distinction between them. See Johnson v. Supreme Truck and Trailer Service, supra; Leigh v. Johnson-Evans Motors, 75 So.2d 710 (La.App. 2nd Cir. 1954); Dupuy v. Graeme Spring & Brake Service, 19 So.2d 657 (La. App.Orl.Cir.1944).