352 So.2d 402 (1977)
Cleveland GUILLOT and Aubrey Marceaux, Plaintiffs-Appellees,
v.
KAPLAN FARMERS CO-OP, INC., Defendant-Appellant.
No. 6165.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1977.
*403 J. Isaac Funderburk, Abbeville, for defendant-appellant.
Edwards, Stefanski & Barousse by Homer E. Barousse, Jr., Crowley, for plaintiffs-appellees.
Before DOMENGEAUX, WATSON, and GUIDRY, JJ.
DOMENGEAUX, Judge.
Plaintiffs, Cleveland Guillot and Aubrey Marceaux, bring this action to recover damages to their rice harvest when part of their crop allegedly became stack burned at the defendant's processing plant.
Plaintiffs operate a rice farm on a partnership basis. Marceaux owns the land and receives forty percent of the revenue from the farm; Guillot performs the labor and receives sixty percent of the revenue from the farm. In August of 1974, plaintiffs brought a sample of rice to the defendant Kaplan Farmers Co-op, Inc. (Co-op) in order to determine whether their rice was ready for harvesting. The Co-op is engaged in the drying and storage of rice. Lynwood Meaux, acting manager of the Co-op, informed Guillot that the rice was ready to be cut and harvesting was begun.
Six loads of rice were brought to the Co-op on August 9th and two loads on August 10th. All eight loads were accepted by Meaux and receipts were issued. However, after a few loads arrived at the Co-op, Meaux determined that the moisture content in the rice was too high and that therefore, the rice was too green to harvest.[1] Rice with higher moisture levels runs a greater risk of stack burning while being stored than rice with lower moisture levels. Meaux directed one of Guillot's truck drivers to tell Guillot to cease harvesting procedures. The message was never relayed. It is unclear whether this occurred on August 9th or August 10th.
On August 10th Marceaux went to the Co-op. Meaux informed him of the high moisture content of the rice and advised that harvesting should cease. When Marceaux arrived at the farm to tell Guillot, he found that Guillot, having drawn the same conclusion, had already ceased harvesting.
The drying process of the eight loads of delivered rice took place from August 14th to August 22nd. The rice was continually stored at the Co-op until it was sold. When the rice was graded by the Department of Agriculture it was found to be stack burned.
As a result of the stack burning, plaintiffs claimed that they received $8.00 per barrel less for the damaged rice than for the normal rice later harvested in the same field during the same season. Plaintiffs seek recovery for this differential as well as the increased storage costs incurred while seeking a willing buyer for the stack burned rice.
*404 The trial court awarded a price differential totalling $6,869.12, but denied the demand for storage expenses. It found that plaintiffs had an opportunity to sell the rice at an earlier date and that, therefore, the storage costs were incurred needlessly. A motion for a new trial was denied and defendant appealed.
The resolution of this case hinges upon the nature of the contractual relationship between plaintiffs and the Co-op and the obligations which spring forth from this relationship.
It is obvious that the contractual relationship between plaintiffs and the Co-op is that of deposit. See Soileau v. Ville Platte Rice Drier, Inc., 322 So.2d 404 (La. App.3rd Cir. 1975). Louisiana Civil Code Article 2926 defines deposit as "an act by which a person receives the property of another, binding himself to preserve it and return it in kind."
Article 2929 states that the deposit is essentially gratuitous and that "[i]f the person with whom the deposit is made receive a compensation, it is no longer a deposit, but a hiring." Since the Co-op in this case received compensation from plaintiffs this would seem to lead to the conclusion that the articles on lease rather than deposit would apply. Such is not the case. The Code contemplates the concept of a compensated depositary. Article 2938 states in part that the degree of care required of a depositary is to be rigorously enforced "[i]f it has been agreed that he shall have a reward for preserving the deposit." Furthermore, both Louisiana, and France have recognized the validity of a deposit for compensation. 2 Planiol, Civil Law Treatise pt. 2, no. 2205 at 274 (11th ed. La.St.L.Inst. transl.1959); Comment, Bailment and Deposit in Louisiana, 35 La.L.Rev. 825, 828 (1975). See, e. g., Coe Oil Service v. Hair, 283 So.2d 734 (La.1973); Soileau v. Ville Platte Rice Drier, Inc., supra; Insured Lloyds v. Liberty Mutual Insurance Company, 295 So.2d 206 (La.App.3rd Cir. 1974); Hazel v. Williams, 80 So.2d 133 (La.App.2nd Cir. 1954).
Having determined the relationship between the Co-op and the farmers is that of deposit, we move to the question of the Co-op's obligation. Articles 1908, 2937, and 2938 of the Civil Code are applicable. Article 1908 provides:
"Art. 1908. The obligation of carefully keeping the thing, whether the object of the contract be solely the utility of one of the parties, or whether its object be their common utility, subjects the person who has the thing in his keeping to take all the care of it that could be expected from a prudent administrator.
This obligation is more or less extended with regard to certain contracts, the effects of which, in this respect, are explained under their respective titles."
Article 2937 provides:
"Art. 2937. The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
Article 2938 provides:
"Art. 2938. The provision in the preceding article is to be rigorously enforced:
1. Where the deposit has been made by the request of the depositary.
2. If it has been agreed that he shall have a reward for preserving the deposit.
3. If the deposit was made solely for his advantage.
4. If it has been expressly agreed that the depositary should be answerable for all neglects."
The depositary, whether gratuitous or compensated, is held to the standard of prudent administrator. Leatherman v. Miller's Mutual Fire Insurance Company, 297 So.2d 540 (La.App.3rd Cir. 1974); Chrysler Credit Corporation v. Caulfield, 252 So.2d 461 (La.App.4th Cir. 1971), application denied 259 La. 956, 253 So.2d 794 (1971); Zesiger v. Dean, 247 So.2d 222 (La. App.4th Cir. 1971). This standard is to be applied more rigorously when the depositary is compensated. Once the existence of the deposit and the damage to the deposited property is established, a presumption arises that the injury was caused by the *405 depositary's breach of his obligation of care. E. g., Coe Oil Service v. Hair, supra; Soileau v. Ville Platte Rice Drier, Inc., supra; Insured Lloyds v. Liberty Mutual Insurance Company, supra; Federal Insurance Company v. C & W Transfer and Storage Company, Inc., 282 So.2d 563 (La.App.4th Cir. 1973); Chrysler Credit Corporation v. Caulfield, supra; Zesiger v. Dean, supra.
Therefore, in the instant case plaintiffs must prove only that the rice deposited at the Co-op was not stack burned at the time of delivery and that it was stack burned at the time of retrieval. We find that these facts have been established in the record.
Expert testimony reveals that stack burning can occur if green rice is improperly stored or left in a truck for an excessive period of time. It was determined that the rice was brought to the Co-op within a few hours after it had been cut. Thus, it did not sit in the trucks for an undue period of time. Furthermore Meaux, the acting manager of the Co-op who accepted the rice testified that he noticed no stack burned rice at the time of delivery. We find, therefore, that the rice was not damaged when it arrived at the Co-op.
The fact that the rice was stack burned when it left the Co-op is amply supported in the record and is substantially uncontradicted.
In order to exculpate itself from liability it became incumbent upon defendant to prove that the rice was damaged without any want of care on its part. Defendant has failed to execute this burden. A review of the pertinent facts reveals that the Co-op knew that the rice had an excessive moisture content at the time of acceptance. Furthermore, several witnesses testified that green rice could be dried properly if attended to immediately. Finally, the rice was stored for four days before any action was taken on the part of the Co-op. Even though the rice was stored in an aerated storage bin, which is supposed to reduce the chances of stack burning, the fact remains that the rice became stack burned without explanation while in the possession of the depositary. Looking to the totality of the circumstances we feel that the Co-op did not act as a prudent administrator in the handling of rice with an excessive moisture content.[2]
Defendant argues in its brief that it should nevertheless be relieved of liability because there was a disclaimer of liability on the front of the receipts given to the plaintiffs for the rice. The receipts were introduced into evidence and contained the following phrase: "Not Responsible For Over 21% Moisture."
Although the codal articles on deposit may be altered by special agreement between the depositor and depositary, actual notice of the modification must be given to the depositor. The Supreme Court stated in Colgin v. Security Storage & Van Co., 208 La. 173, 23 So.2d 36, 39, (1945):
"A contract is implied by law when the deposit is received. To modify the contract implied by law, the special provisions must be either a part of the original contract or contained in an amendatory contract. In order for the special provisions to be effective, the assent of both parties is necessary. One of the parties, without the consent of the other, cannot modify the implied contract. There must be a meeting of the minds of the parties to effectuate the special contract."
See also, General Accident Fire & Life Assurance Co., Ltd. v. J. F. D. L., Inc., 148 So.2d 857 (La.App.4th Cir. 1963); Fidelity & Deposit Company of Maryland v. Rednour, *406 44 So.2d 215 (La.App. Orl. Cir. 1950). Comment, Bailment and Deposit in Louisiana, 35 La.L.Rev. 825, 838 (1975).
We cannot find that plaintiffs assented to the limiting phrase. Defendant argues that the receipts were given to plaintiffs' drivers at the time the rice was deposited and that the drivers were plaintiffs' agents. Thus, defendant concludes that they should be held to have acquiesced in the limitation. Defendant also argues that since Marceaux is a stockholder and participating member of the Co-op, he is bound by all of the rules and regulations of the Co-op. Therefore, he must have had knowledge of the limiting phrase. We find, however, that there was not an adequate showing of assent for us to give effect to the clause.
In Federal Insurance Company v. C & W Transfer and Storage Co., Inc., supra, a rug cleaner sought to assert a limitation of liability clause when the depositor's goods were stolen from the depositary's premises. When the rugs were picked up at the depositor's home, a maid signed the contract limiting liability. The court refused to give the clause effect even though it determined that the maid was an agent of the depositor. The court stated:
"As provided by Article 3021 of our Civil Code a principal is bound by the agreements contracted by his agent conformably to the power vested in the agent and, except insofar as he has expressly ratified the same, the principal is not bound for anything further. However, a third party who deals with an agent is required to determine whether or not the contract about to be consummated comes within the agency and will or will not bind the principal. And as between the principal and the third party who enters into a contract with the agent, the burden of showing the agent acted within the confines of his authority is upon the third party." [footnotes omitted]
Guillot testified that he had done business with the Co-op on prior occasions and was completely unaware of the limitation of liability. We find that there was no evidence to indicate that Guillot actually acquiesced in the limitation.
As to Marceaux, the rules and regulations of the Co-op were not introduced into the record at trial. We therefore have no way of knowing what these rules contained and whether Marceaux had actual knowledge of the limitation. Consequently we cannot find that Marceaux acquiesced in the limitation.
For the above reasons we affirm the judgment of the District Court. All costs are to be assessed against the defendant-appellant.
AFFIRMED.
NOTES
[1] The moisture content of the eight loads, in order, were 21.5%, 21.5%, 22.0%, 21%, 22.0%, 23.4%, 23 + %, and 23 + %. It appears that the preferred maximum moisture content for harvesting and drying is 21%, although rice with higher moisture levels can be successfully dried.
[2] Compare, however, Soileau v. Ville Platte Rice Driers, supra, in which this court affirmed the judgment of a trial court where similar demands of soy bean farmers for spoilage of their crop were rejected. In that case, the trial court found that the depositary had taken all reasonable steps to preserve the beans. In addition to their being an unduly high moisture content in the beans, the trial judge found that the beans were abnormally damaged and contained excessive foreign matter even before they were deposited. Although, in the instant case, the moisture content of the rice was not ideal, evidence indicates that it was not unduly excessive. Nothing in the record indicated that the rice was abnormal in any other respect.