CARTER, Judge.
This is a suit for damages. Plaintiff, Harold J. Leone, Jr. (Leone), sued Government Employees Insurance Company (GEI-CO) under his comprehensive automobile insurance policy. GEICO filed a third party demand against R.S. & S., Inc. (R.S. & S.), Richard Hartwig, d/b/a The Body Shop (Hartwig), and O.C. Auto Air & Parts, Inc. (O/C Auto). Leone subsequently amended his original petition, naming R.S. & S., Hartwig, and O/C Auto as defendants.[1]
In June of 1979, Leone purchased a 1975 Jaguar XJ6C, with a rebuilt engine, from Jerry M. Campbell.[2] In August of 1979, Leone was involved in an automobile collision which damaged the front end of the Jaguar and rendered it inoperable. The wrecked Jaguar was then towed to R.S. & S. for repair estimates, where it remained for two to three weeks.
In late August of 1979, while parked on the lot at R.S. & S., the Jaguar was vandalized. The damages which resulted from the vandalism included: (1) a broken passenger window; (2) a damaged C.B. and radio/cassette unit; (3) a stolen stereo equalizer; (4) a damaged console window control unit; and (5) damaged rear seat upholstery.[3]
On August 29, 1979, the Jaguar was towed to Hartwig’s shop for repair. Hart-wig was authorized by Leone to repair body damage which included: the right front fender; the bumper, hood, and grill; the radiator; and the air conditioning condenser. In repairing the Jaguar, Hartwig re-cored the old radiator and replaced it. After completing most of the repairs, Hartwig could not start the Jaguar. Sid Gearhart, an experienced Jaguar mechanic, was contacted, and a day or two later he examined the car and found that the impact switch had been activated.[4] After re-setting the impact switch, Gearhart started the Jaguar. He performed tests both before and after starting the car and determined that it was operating properly. Gearhart testified that he watched the water flow across the top of the radiator and across the engine, which indicated that the water pump was working. He also watched the temperature gauge and noted that it did not go over the operating temperature.
After Gearhart’s examination and Hart-wig’s completion of other repairs, Hartwig had the Jaguar driven approximately three miles to O/C Auto for work on the air conditioning system.[5] Herman Oufnac, owner of O/C Auto, testified that in No *310 vember 1979, O/C Auto received the Jaguar and began work on it two days later. Ouf-nac testified that it took about a day and a half to complete the repairs.
In performing the work, O/C Auto installed the condenser,[6] evacuated the system, and then charged the system with freon. Three one-pound cans of freon were put into the air conditioning system. The car was not started until a third can of freon was being charged into the air conditioning system. The engine of the Jaguar was run for about fifteen minutes, during which time no external fan was directed toward the engine. O/C Auto performed leakage and performance tests on the system while the car was running. After the air conditioning work had been completed, Hartwig picked up the car.[7]
In January 1980, the Jaguar was driven by one of Hartwig’s employees to Gear-hart’s shop, a distance of approximately one hundred yards. The car was barely operating under its own power, and upon inspecting it, Gearhart discovered that the cylinders had very little compression. After receiving authorization from Leone, Gearhart further inspected the engine and found severe scoring of the cylinder walls resulting from engine overheating. These conditions necessitated a complete engine overhaul.
At trial on the merits, the trial judge granted a motion for directed verdict in favor of GEICO, Hartwig, and O/C Auto and dismissed plaintiffs demands. Plaintiff, however, moved for a new trial, which was granted by the trial court. The new trial was granted only as to defendants Hartwig and O/C Auto and was limited to the issue of defendants’ prudent administration as compensated depositaries. After the new trial, the trial court rendered judgment in favor of defendants Hartwig and O/C Auto. Plaintiff has appealed devolu-tively from both judgments, urging the following assignments of error.
1) The trial court erred in granting the motion for directed verdict in favor of defendant GEICO;
2) The trial court erred in granting the motion for directed verdict in favor of defendants Hartwig and O/C Auto; and
3) After granting a limited motion for new trial as to claim against Hartwig and O/C Auto, the trial court erred in finding in favor of defendants.
ASSIGNMENT OF ERROR NO. 1
Plaintiff contends that the insurance policy issued to him by GEICO was in effect at the time of the engine damage to the automobile and that the exclusion clause of the policy does not apply to his claim.
GEICO contends that plaintiff’s damages occurred in November, 1979, and that the effective date of the policy, December 2, 1979, is controlling as to when coverage began. GEICO also contends that even if the policy was in effect at the time of the damage, the type of damage which occurred is excluded from coverage by specific provision in the policy.
The trial court found that the GEICO policy was not effective until December 2, 1979, despite Leone’s appreciation of an earlier effective date of coverage. The trial court stated that the documentary evidence (the policy itself) should be given more weight than the insured’s testimony with reference to insurance coverage under the policy. The trial court also found that the damage suffered by Leone is within the exclusion of the GEICO policy and that the “due to” phrase should not be interpreted to mean causation in the manner in which plaintiff has construed it. For those reasons, the trial court granted the motion for directed verdict in favor of GEICO.
Leone testified that he was told on numerous occasions by GEICO representatives that he had insurance coverage on the Jag *311 uar. He testified that GEICO provided insurance coverage on another automobile and that this existing policy had a form attached, which could be utilized to seek coverage for an additional vehicle. Leone testified that upon purchasing the Jaguar, he filled out the form requesting the additional coverage and mailed it to GEICO. He contends that the requested coverage should have gone into effect on the date of the postmark on the form.
Leone produced two “Geicograms”, which had been sent to him by GEICO. The first, dated October 30, 1979, indicated that GEI-CO did not offer the type of coverage with the deductible amounts that Leone desired. The “Geicogram” further stated that GEI-CO was issuing comprehensive and collision coverage on the Jaguar, with deductibles of $50.00 and $100.00 respectively. The correspondence apologized for the delay and stated that corrected policy papers and billing would follow. The second “Geicogram”, dated November 9,1970, plainly stated that previous correspondence was in error and that the Jaguar would be added to his policy effective October 9, 1979.
GEICO produced the insurance policy, entitled Family Automobile Policy Endorsement Declarations, which specified the coverages, limits, and premiums on both automobiles. The effective date of the policy was December 2, 1979. The trial court relied on this document in determining that plaintiff was not covered by insurance at the time of the loss in November, 1979.
In this regard, the trial court erred. The “Geicogram” of November 9,1979, unequivocally states that coverage for the Jaguar would be added to plaintiff’s policy as of October 9, 1979. Plaintiff was entitled to rely on this communication, and GEICO cannot thereafter deny coverage for this period. Therefore, we find that the policy issued by GEICO was effective on the date of plaintiff’s loss.
The next question, however, is whether plaintiff was covered for the type of loss from which he suffered. Plaintiff relies on Part III Coverage H(l) of the insurance policy (the comprehensive provisions) for coverage, which reads as follows:
“To pay for loss caused other than by collision to the owned automobile ...”
GEICO argues that damage caused by an overheated engine is excluded from comprehensive coverage by the following provision:
“Exclusion: This policy does not apply under Part III:

(c) to damage which is due and confined to wear and tear, freezing, mechanical or electrical breakdown or failure, unless such damage results from a theft covered by this policy.”
The trial court found (and the record supports) that the engine damage occurred during the time the Jaguar was entirely and exclusively within the control of Hart-wig and/or O/C Auto[8] and that excessive heat caused such damage.[9]
There is no doubt that plaintiff’s loss was caused other than by collision. Plaintiff’s expert, Gearhart, mentioned several possibilities as to what could have caused the engine to overheat.[10] GEICO argues that whichever of these possibilities caused the engine to burn up, the damage was caused *312 by “mechanical failure” and, thus, is excluded from coverage. We agree. Even though the mechanical failure most likely resulted from acts or omissions of compensated depositary repairmen, the loss is expressly excluded from coverage since said loss is due to mechanical breakdown.
ASSIGNMENT OF ERROR NO. 2
Plaintiff argues that the trial court erred in granting a motion for directed verdict in favor of Richard Hartwig d/b/a The Body Shop and O.C. Auto Air & Parts, Inc. Plaintiff urges that under Louisiana law, once a defendant has been found to be a compensated depositary and the thing deposited has been lost or damaged, the burden shifts to the defendant to prove that he was not guilty of negligence or fault. Plaintiff contends that the trial court erred in holding that the burden rested on the plaintiff to prove fault.
Defendants argue that even if the directed verdict was erroneously granted, the error was cured when the trial court granted the motion for new trial and required defendants to prove that they acted as “prudent administrators” of the Jaguar, while it was in their custody.
In granting the motion for directed verdict, the trial court concluded that plaintiff had not proven by a preponderance of evidence that defendants’ negligence or fault caused the damage. This conclusion, however, incorrectly allocated the burden of proof.
Once existence of deposit and loss of or damage to the property while deposited is established, a presumption arises that the loss resulted from the lack of due care on the depositary’s part, and the burden is then on the depositary to exonerate himself from fault. Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973); Grabert v. James C. Noel Flying Service, Inc., 360 So.2d 1363 (La.App. 3rd Cir.1978), writ denied, 363 So.2d 536 (La.1978); Saunders Leasing System v. Neidbardt, 381 So.2d 979 (La.App. 4th Cir.1980). Stated another way, a depositary is obliged to act as a prudent administrator; proof that the deposited property was returned in a damaged condition raises a presumption that the depositary has not fulfilled his obligation. Laubie v. Sonesta Intern. Hotel Corp., 398 So.2d 1374 (La.1981). The depositary must then produce competent evidence to overcome the presumption. Coe Oil Service, Inc. v. Hair, supra; Saunders Leasing System v. Neidhardt, supra.
The trial court found, and we agree, that Hartwig and O/C Auto were compensated depositaries and that the damage to the Jaguar occurred while the car was entirely and exclusively within the control of Hartwig and/or O/C Auto. In so holding, the trial judge stated:
“I think the plaintiff has proven that both the defendant Hartwig, or The Body Shop, and the defendant O-C Auto Air & Parts, Inc. were compensated depositaries as a matter of fact, from the facts in the record so far. I find that the plaintiff has proven by the preponderance of the evidence that the automobile in question was in excellent running condition while still in the custody of Mr. Hartwig when last seen by Mr. Gearhart.... I find that his [Mr. Gearhart’s] testimony excludes the possibility that the damage to the engine was caused by the wreck.... Therefore, of necessity, it was caused by something else.... I think the plaintiff has shown that when Mr. Gearhart received custody of the engine and the automobile that there had been damage to the engine because of excessive heat. I think the plaintiff has shown beyond any doubt — that’s more than beyond a reasonable doubt, more than a preponderance of the evidence and more than a possibility — that Mr. Leone himself did not cause the damage to the engine.
“I find as a fact that the damage to the engine occurred sometime between the time Mr. Gearhart started the engine at Mr. Hartwig’s place of business and the time he received it from Mr. Hartwig and that during that period of time, it was entirely and exclusively in the control of *313 Mr. Hartwig and/or Mr. Oufnac.’ (Record, pp. 229-230)
The trial court erred, however, in not requiring the defendants to show absence of fault on their part. This error was corrected by the trial court when it subsequently granted a new trial to require defendants, as compensated depositaries, to overcome the presumption of fault and to establish that they acted as prudent administrators in caring for the property as their own. Therefore, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NO. 3
Plaintiff argues that defendants did not bear the burden of proving that they were free from fault and that they were, therefore, unsuccessful in rebutting the presumption that the damage to the Jaguar resulted from a breach of the depositary’s obligation to act as a prudent administrator. Particularly, plaintiff argues that the possible causes of the engine overheating given by Gearhart do not occur absent negligence.
Defendants argue that the trial court determination, viz., that defendants’ actions in caring for the Jaguar were those of a prudent administrator, should not be disturbed on appeal absent manifest error.
The trial court found that the defendants carried their burden of proving that they acted in a prudent and careful manner and that the defendants had eared for the Jaguar in the same manner as they would care for their own property. We disagree.
LSA-C.C. art. 2937 states that the depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.[11] Although the basic obligation of the depositary is to act as a prudent administrator, LSA-C.C. art. 2938 requires this obligation to be rigorously enforced in four instances:
“(1) Where the deposit has been made by the request of the depositary;
(2) If it has been agreed that he shall have a reward for preserving the deposit;
(3) If the deposit was made solely for his advantage;
(4) If it has been expressly agreed that the depositary should be answerable for all neglects.”
If the depositor seeks legal redress for deposited goods that have been damaged, he must prove the existence of the contract of deposit and that the deposited article was returned in a damaged condition. Bond v. Helmer, 215 So.2d 355 (La.App. 4th Cir.1968); Olinde Hardware & Supply Co. v. Ramsey, 98 So.2d 835 (La.App. 1st Cir.1957). Proof of these facts raises a presumption that the depositary has not fulfilled his obligation to act as a prudent administrator. At that point, the burden of proof shifts to the depositary to demonstrate that he used the same diligence in preserving the deposit that he would use in preserving his own property.[12] A prudent administrator, who also undertakes work and repair, must establish that the work and repair did not cause the damage to be relieved of responsibility. Horrell v. Smith, infra.
The trial court found that defendants Hartwig and O/C Auto were compensated depositaries and that the Jaguar was damaged while in their custody. Therefore, the only remaining issue is whether defendants acted as prudent administrators.
*314 Defendant Hartwig testified that he personally performed most of the work on Leone’s Jaguar, i.e. he repaired the body damage and re-eored the radiator. He stated that once work on the car began, it was kept inside the building at all times and the keys to the car were kept inside the shop.[13] Hartwig, however, did admit that it was possible that the car had been started and moved within the shop or that work had been’ performed on it while he was not present. More importantly, Hartwig produced no evidence to prove that the damage to the engine was a result of anything other than his failure to act as a prudent administrator. Therefore, he has failed to exonerate himself from the legal presumption of fault.
Defendant Oufnac testified that the Jaguar was delivered to O/C Auto for work on the air conditioning system. He testified that the Jaguar was locked in his shop at night and that the keys were locked in his office. In the process of repairing the air conditioning system, Oufnac testified that the Jaguar motor was run about fifteen minutes while the last can of freon was being charged through the system. Oufnac, however, was unable to rebut the presumption that the damage to the engine, which was the result of overheating, was occasioned by his breach of duty to act as a prudent administrator.
The trial court granted a new trial for the limited purpose of determining whether defendants, as compensated depositaries, acted as prudent administrators. Each defendant established that the Jaguar was maintained in a secure area, i.e. fenced, well-lighted, etc.; however, neither defendant produced evidence negating their presumed lack of due care, negligence, or fault as to the work performed on the vehicle.
The instant case is somewhat analogous to Horrell v. Smith, 387 So.2d 1211 (La.App. 1st Cir.1980). In Horrell, the defendant was a television repairman, who attempted to repair plaintiff’s television set. Defendant took the set to his shop, worked on the set, and returned the supposedly repaired set to plaintiff almost a month later. When defendant tested it at plaintiff’s home, smoke and acrid odors emerged from the set (apparently the result of an electrical fire or malfunction). It was later determined that the set could not be repaired because of fire damage. This Court summarized the jurisprudence as follows at page 1212:
“When Smith undertook the repair of the plaintiff’s television set for a price and removed it to his shop for that purpose, a relationship of depositor-compensated depositary was entered into between the parties. See Miller Car Washes, Inc. v. Crowe, 245 So.2d 485 (La.App. 2d Cir.1971) and the authorities cited therein.
“On numerous occasions, the courts of this state have determined that such a repairman, characterized as a compensated depositary, is one against whom the obligation of preserving the property is rigorously enforced.
“Insured Lloyds v. Liberty Mutual Insurance Company, 295 So.2d 206 (La.App. 3d Cir.1974); Home Insurance Company v. Southern Specialty Sales Company, 225 So.2d 776 (La.App. 4th Cir.1969).
“The rules pertaining to the relationship are specifically set out in Civil Code Articles 2937 and 2938, to-wit:
⅜ sfc * * #: *
“In Insured Lloyds, supra, the court stated:
‘In fact once the existence of a deposit is established as well as the loss or damage to the property deposited, a presumption arises that the same resulted from the depositary’s lack of due care, negligence, or fault and the burden is then on the depositary to exonerate himself from such negligence or fault. Coe Oil Service Inc. v. Hair, [283 So.2d 734] supra; Federal Insurance Co. v. C. & W. Transfer & Storage Co., Inc., 282 So.2d 563 (La.App. 4th Cir. *315 1973); Chrysler Credit Corporation v. Caulfield, 252 So.2d 461 (La.App. 4th Cir.1971).’
“When the defendant returned Hor-rell’s television set after it had supposedly been repaired and a fire or electrical malfunction took place immediately upon it being turned on, it became incumbent upon Smith to establish he was free from fault.
“The evidence indicates that a short circuit took place in the wiring of the printed circuit board of the set. According to the statement for the services presented by the defendant, repair work had been done by Smith on the printed circuit board. Therefore, it would appear not only has the defendant failed to exonerate himself, but the most likely cause of the fire was the work he had just completed. Based upon that evidence, we find the defendant’s liability to be established.”
Both Hartwig and O/C Auto performed work on Leone’s vehicle, work which could have caused the engine to overheat thereby producing the damages complained of herein. Hartwig operated the vehicle and performed repair work on the radiator, and O/C Auto ran the engine of the Jaguar for approximately 15 minutes without an exterior fan.[14] Therefore, it appears that the individual work performed by each defendant, or a combination of the work performed by both defendants, caused the engine to overheat with resulting damage, and both defendants have failed to exonerate themselves. Therefore, we are presented with a case in which there are two compensated depositaries, each of whom could have caused the damage. Because we find that neither was able to exonerate himself from the presumption of fault, we hold both liable in solido to plaintiff.
The receipts in evidence demonstrate that Leone paid $4,107.39 to Gearhart to repair the engine damage. Therefore, Richard Hartwig, d/b/a The Body Shop, and O.C. Auto Air & Parts, Inc. are liable in solido to Harold J. Leone, Jr. in the amount of $4,107.39.
For the above reasons, the judgment of the trial court in favor of Government Employees Insurance Co. and against plaintiff is affirmed. As concerns defendants Richard Hartwig d/b/a The Body Shop, and O.C. Auto Air & Parts, Inc., the judgment of the trial court is reversed and judgment is rendered in favor of plaintiff Harold J. Leone, Jr. and against aforesaid defendants in the amount of $4,107.39 with legal interest from date of judicial demand until paid. All costs to be assessed against defendants Richard Hartwig, d/b/a The Body Shop, and O.C. Auto, Air and Parts, Inc.
AFFIRMED IN PART; REVERSED IN PART; AND, RENDERED.

. R.S. & S. settled with plaintiff prior to trial on the merits. As a result, the main demand and the third party demand against R.S. & S. were dismissed. Neither party has appealed the dismissal of R.S. & S.; therefore, this matter is not before us on appeal.

. Campbell testified that approximately six months before he sold the car to Leone, the engine had to be rebuilt because the engine had frozen when the car was driven with a bursted radiator hose.

. Leone settled this $600.00 vandalism claim with R.S. & S. for $300.00 prior to trial on the merits.

. Gearhart testified that the impact switch is designed to shut off the fuel system. Upon impact with a bump more severe than a parking lot bump, the impact switch shuts off the electrical fuel pumps so that if the fuel lines rupture, fuel will not continue to be pumped out. He estimated that a car would run out of gas twenty to thirty seconds after the impact switch is activated.

. O/C Auto Air did not supply the condenser, but was merely authorized to install a condenser which had been furnished by Leone.

. The car had been delivered without an installed condenser. Although there is no indication as to who removed the condenser after the collision, the Jaguar’s condenser was on the seat of the car when O/C Auto began its work.

. The Jaguar remained at O/C Auto for four to five days, from the date it was delivered until the date it was picked up.

.The Jaguar was examined at Hartwig’s shop after the wreck, and Gearhart found that the vehicle was operating properly. Hartwig completed his repairs and drove the Jaguar to O/C Auto. After O/C Auto completed work on the air conditioning system, Hartwig retrieved the Jaguar. Subsequently, Hartwig delivered the car to Gearhart’s shop. Gearhart testified that the condition in which he found the engine at this later date, viz., severe scaring of the cylinder walls, necessitated a complete engine overhaul.

. The trial court accepted Gearhart as an expert witness on Jaguars. Gearhart testified that, in his opinion, excessive heat caused the damage.

. The possible causes include:
(1) Ruptured gasket;
(2) Excessive timing;
(3) Water pump failure;
(4) Charging air conditioning system without using an external fan; and
(5) Low level of coolant in radiator, caused
by improper filling.

. As noted in “Bailments and Deposit in Louisiana”, 35 LLR 825, 835, n. 59 & 61 (1975), the fact that the depositary is careless with his own property does not mean he may be careless with the property of the depositor. The Louisiana jurisprudence has imposed an objective duty of acting as a prudent administrator.

. The depositor at all times retains the burden of proving that the depositary breached his obligation. The plaintiff is merely aided in his task by the presumption that such a breach occurred if the movable is not returned intact upon delivery, the presumption relieving the depositor of demonstrating any specific act of the depositary that would constitute nonfea-sance or misfeasance. “Bailments and Deposit in Louisiana”, 35 LLR 825 (1975).

. Mr. Hartwig testified that when the Jaguar was parked outside the building, it was located close to the building and in the same area in which he parks his personal car.

. The expert witness testified that although there were several possible causes of the damage, the work of either defendant could have caused the engine to bum up. (See N. 10 for list of possible causes). Gearhart ruled out all possibilities, with the exception of low level of coolant in radiator caused by improper filling or running the engine to charge freon into air conditioning system without the use of an external fan to keep the engine cool.